[L. A. No. 1686. In Bank.—April 5, 1905.]

## J. P. DAVENPORT, Petitioner, v. CITY OF LOS ANGELES et al., Respondents.

City Charter of Los Angeles—Petition for Recall of Officer—Insufficient Certificate—Admissions in Mandamus—Void Proceedings.—Under the charter of Los Angeles, providing for the recall of an officer and for a special election for a successor upon petition of twenty-five per cent of the total vote cast for the office at the last election, and requiring as a condition that the city clerk shall ascertain from the *"great register"* whether the petition is sufficiently signed, a certificate stating that 2,864 votes were last cast for the office, and the ascertainment from the great register that 784 names of qualified electors were signed to the petition, and that it was sufficient, is overcome by the specification that "514 names were compared with the *duplicate affidavits of registration,* and the balance with the *originals,*" and by the pleadings and stipulation and briefs in *mandamus* showing that only 339 of the names signed were in fact upon the great register. The proceedings for recall by special election under such certificate were void, and the officer is entitled to the residue of his term and salary. [Beatty, C. J., dissenting.]

PETITION for Writ of Mandate to the City of Los Angeles, and to the City Council, City Auditor, and City Treasurer.

The facts are stated in the opinion of the court.

A. B. McCutchen, and J. S. Chapman, for Petitioner.

W. B. Mathews, and Herbert J. Goudge, for Respondents.

McFARLAND, J.—This is an original petition here by the above-named J. P. Davenport for a writ of mandate requiring certain named respondents who are members of the city council of the city of Los Angeles to allow petitioner to take his seat in that body and perform the duties of the office of councilman from the sixth ward of said city, and requiring other named respondents, who are auditor and treasurer of said city, to issue and pay a warrant for petitioner's salary as such councilman for the month of Stepember, 1904.

The material facts in the case are these: In the year 1902, and prior thereto, and continuously to the present time, the city of Los Angeles was and is a municipality existing under what is generally known as a "freeholders' charter." Its charter—down to the time of a certain election which took place on December 1, 1902, hereinafter mentioned—provided that the legislative power of the city should be vested in a council consisting of one councilman to be elected in and by the electors of each ward of the city, who should hold his office for the term of two years from the first Monday of January next succeeding his election. An election for city officers was regularly held on December 1, 1902, at which election the petitioner, Davenport, was duly elected a member of the city council from the sixth ward, and on the first Monday of January, 1903, having duly qualified, he took his seat as such member of the council, and continued to hold said office and perform its duties until the month of September, 1904, at which latter time the respondents, who are members of the council, refused to further recognize him as a councilman and installed in his place and stead one Arthur D. Houghton, and from that time the other respondents refused to draw or pay any warrant for petitioner's salary. This, of course, was before the expiration of the two-year term for which petitioner had been elected.

The reasons for the above acts of respondents are based on these facts: At the said election of December 1, 1902, at which petitioner was elected, the electors of the city of Los Angeles voted upon and adopted three certain amendments to the city charter—called respectively the "initiative," the "referendum," and the "recall," which amendments were ratified by the legislature of the state on the twenty-third day of

January, 1903. We are concerned here only with the amendment designated as the "recall"; neither the "initiative" nor "referendum" is here involved. The "recall" amendment, so far as material here, is as follows: "Section 198c. *The Recall.* The holder of any elective office may be removed at any time by the electors qualified to vote for a successor of such incumbent. The *procedure* to effect the removal of an incumbent of an elective office shall be as follows: A petition signed by electors, entitled to vote for a successor to the incumbent sought to be removed, equal in number to at least twenty-five per centum of the entire vote for all candidates for the office, the incumbent of which is sought to be removed, cast at the last preceding general municipal election, demanding an election of a successor of the person sought to be removed, shall be filed with the city clerk; *provided,* that the petition sent to the council shall contain a general statement of the grounds for which the removal is sought. . . . Within ten days from the date of filing such petition the city clerk *shall examine and from the great register ascertain* whether or not said petition is signed by the requisite number of qualified electors, and if necessary the council shall allow him extra help for that purpose, and he shall attach to the said petition his certificate *showing the result of said examination.* . . . If the petition shall be found to be sufficient the clerk shall submit the same to the council without delay. If the petition shall be found to be sufficient the city council shall order, and fix a date for holding the said election, not less than thirty days nor more than forty days from the date of the clerk's certificate to the council that a sufficient petition is filed." (The italics are ours.) It is further provided in this section that an election shall be called, and if any person other than the incumbent shall have received the highest number of votes for the office, "the incumbent shall thereupon be deemed removed from the office upon qualification of his successor." It is further provided that if the incumbent receive the highest number of votes he shall continue in office.

Pursuant to the amendment above mentioned there was filed with the city clerk on August 1, 1904, a petition, purporting to be signed by more than twenty-five per cent of the electors of the sixth ward entitled to vote for a successor to petitioner, praying for his removal. No cause was assigned in the

petition for his removal, except that he had voted for two certain ordinances. It contained no charge of corruption or misdemeanor in office, or any official misconduct. On August 8, 1904, the city clerk delivered the petition to the city council with the following certificate:—

"August 8, 1904.

"To the Honorable Council of the City of Los Angeles— Gentlemen: I beg to report that on the 1st day of August, 1904, a petition was filed with me demanding the recall of J. P. Davenport, a member of the city council for the sixth ward. The entire vote cast for all candidates for office of councilman in the sixth ward at the last general municipal election was 2,864. That I have examined and from the great register ascertained whether or not said petition was signed by the requisite number of qualified electors, and as a result of said examination I find that said petition is signed by 784 electors entitled to vote for a successor to said councilman in the sixth ward, and I hereby certify that said amended petition is sufficient. The 514 names were compared with the duplicate affidavits of registration and the balance with the originals.

"Respectfully,

"H. J. LELANDE, City Clerk."

Thereafter the said council ordered an election to be held on September 16, 1904, in the said sixth ward, for the purpose of removing the petitioner and electing his successor; and such election was held on said date, and at said election said Arthur D. Houghton received the largest number of votes as councilman from said sixth ward. On September 20, 1904, the council canvassed the votes cast at such election and declared said Houghton elected, and since then the council have recognized Houghton as councilman for the sixth ward in place of petitioner, and have refused the latter a seat as a members of their body; and defendants the auditor and treasurer have refused to draw a warrant or to pay the same for petitioner's salary for said September. Under the charter the salary of a councilman is twelve hundred dollars per annum, payable in monthly installments of one hundred dollars. The charter provides that the qualifications of an elector for a city office shall be the same as those prescribed by the state laws for electors at a general election, and that the city elections shall be held and conducted in accordance

with the provisions of the laws of the state for holding general elections.

Upon the facts and conditions above stated petitioner, by his counsel, contends, on many grounds, that his attempted removal from his said office was unauthorized, illegal, and abortive. He attacks the constitutionality of the "recall" amendment, and contends not only that it has no place in the general system of the American republican form of representative government, and undertakes to give to a part of the people in their primitive capacity the power to make laws which resides only in the legislature, but also that it expressly violates certain specific provisions of the state constitution which he "lays his finger upon." He also contends that the recall, even if valid, is not retroactive and does not apply to the petitioner, who was elected and installed in office before the amendment went into effect at the date of its ratification by the state legislature; and that, for the reasons stated, it cannot in the nature of things apply to members of the city council. Other contentions are also made which need not be here enumerated. But in our view of the case it is not necessary to examine the positions taken by petitioner above stated, because, in our opinion, we must sustain his further contention that the proceedings by which he was removed were void—even assuming the recall amendment to be valid —for the reason that the city clerk did not examine the great register and therefrom ascertain that the petition for removal contained the requisite number of persons authorized to sign such petition, and because it appears that it was not so signed. It appears from the pleadings, and a stipulation in the case, as well as from the briefs, that the petition was not signed by the requisite number of persons whose names were on the great register; although it appears that in addition to 339 of such persons who were on the great register, there were enough of other persons who had made affidavits of registration during the year 1904, which affidavits had been bound together and indexed by the county clerk, to constitute the twenty-five per cent of voters. It is contended by respondents that notwithstanding these facts the certificate of the city clerk must be taken as conclusive that he did examine the great register and ascertain therefrom, etc.; but it is not necessary to discuss the question whether a clerk's

certificate that he did ascertain the necessary facts from the great register should be considered as conclusive, because the clerk's certificate in the case at bar is on its face substantially the same as the stipulation. The first part of the certificate is ambiguous, but the subsequent clause,—to wit, "The 514 names were compared with the duplicate affidavits of registration and the balance with the originals,"—shows what he did, and that he did not ascertain the requisite facts from the great register.

The question involved here is not whether persons had properly voted at a certain election without being on the great register if they had made their affidavits of registration. There is no question here as to the right to vote at an election under section 1 of article II of the state constitution, or as to how far the constitutional right might be controlled by a registry law. This is not an election contest involving the qualification of certain persons who had voted at such election. The question here is the sufficiency of a certain *procedure* leading up to proceedings for the removal of an officer already duly elected and installed in office. In order to inaugurate that procedure so as to give jurisdictional character to the proceedings which are to follow, there must be a compliance with the provision of the law which authorizes the procedure. The provision in the recall amendment, which is the provision of law that governs in the case at bar, is, that the petition for removal must be signed by a certain number of electors whose names are ascertained by the city clerk to be on the great register; and the constitution does not vest in any person the right to sign such petition. There is no room left for ascertaining in any way other than by an inspection of the great register who the petitioners must be. Their names must be on the great register and ascertained by the clerk to be there, otherwise they are not qualified signers of the petition, no matter what other qualifications they may have. In *Huston* v. *Anderson,* 145 Cal. 320, and *People* v. *Worswick,* 142 Cal. 71, as well as in other cases, it is definitely settled that the "Great Register" is the same now as it was before certain amendments of the Political Code made in 1899, and that affidavits of registration are not a part of said great register. We need not inquire into the purpose of the provision that the signers of the petition must be persons who are

on the great register; it may have been intended that newcomers into a district should not be encouraged to try to upset a former election; but whatever the reason may have been, we must take the provision as it stands, and it clearly provides that the petitioners must be persons whose names are on the great register.

Under the foregoing facts we are of opinion that the said petitioner was not legally removed from his said office; that he should have been recognized by the respondents as a member of the city council until the expiration of the term of office for which he had been elected; and that the respondent the city auditor should have drawn his warrant for petitioner's salary for said month of September, 1904, and respondent the said treasurer should have paid the same. However, as petitioner's term of office has expired, a writ of mandate as prayed for to the respondents who are members of the city council could now have no effect, and will not be now ordered. But petitioner is entitled to his salary for the month of September, 1904, and also, of course, for subsequent months until the end of his term; and it is ordered that a writ of mandate issue from this court in this proceeding, requiring and commanding the auditor of said city of Los Angeles to draw his warrant in due form of law in favor of petitioner herein, for one hundred dollars for his salary as said councilman for the said sixth ward in said city for the month of September, 1904, and commanding the treasurer of said city to pay said warrant.

Shaw, J., Van Dyke, J., Lorigan, J., Henshaw, J., and Angellotti, J., concurred.

BEATTY, C. J., dissenting.—I dissent. None of the constitutional questions affecting the validity of the recall amendment to the Los Angeles charter are decided by the court, and I shall not discuss them. But assuming, as the court does for the purposes of the decision, that the amendment is valid, I wish merely to point out what I deem to be the error in the conclusion of the court from its own premises. It is held to be essential to the jurisdiction of the council to order an election that the petition of the electors shall be accompanied by a certificate of the clerk that the petition is sufficient, and

that this certificate must show that it is based upon a comparison of the signatures with the entries in the great register (meaning thereby, in this instance, the completed great register of 1902, and ignoring the nearly completed great register of 1904). I do not concur in this view; but conceding for the present that it is correct, it is plain to my mind that the clerk's certificate, even on the view of the court is in full compliance with the charter. It is quoted in the opinion of the court, and the criticism upon it is that the first part of it is ambiguous, but that the subsequent clause shows what the clerk did. I think, on the contrary, that nothing could be clearer, more direct, or unequivocal than the first part of the certificate down to and including the words "and I hereby certify that the amended petition is sufficient," So far it is in exact and literal compliance with the charter, and contains everything that the charter requires. There is no ambiguity and no deficiency. It shows, that is to say, that he has examined the great register and from that ascertained that the petition is signed by the requisite number of electors entitled to vote for the successor, etc. Where is the ambiguity to which the court refers? I certainly can discover none, and, unless the following clause contains something inconsistent or contradictory, it may and must be treated as mere surplusage. I am equally unable to discover the assumed inconsistency or contradiction. All that appears from the last clause is, that the names were compared with the original and duplicate affidavits of registration—a statement not in the slightest degree inconsistent with the first part of the certificate. For every name on the great register there is a corresponding affidavit on file, and a statement that such affidavits have been compared does not on any known principle of construction invalidate a certificate that the register has been examined. Both statements may be entirely and literally true, and if the first satisfies the law the latter is merely superfluous and harmless. If this view is correct, the certificate was sufficient on its face, and as against this collateral attack upon the order of the council that is conclusive in favor of the jurisdiction. It is of no consequence what may be alleged to the contrary in the pleadings, or stipulated by the parties, or stated in the briefs. If the certificate was sufficient on its face, the jurisdiction of the board cannot be assailed. If the

record shows jurisdiction, it cannot be impeached by allegation or proof *aliunde.* For these reasons it seems clear to me that the opinion of the court fails to sustain itself on the purely technical grounds upon which it is rested.

I am also of the opinion that if the clerk's certificate could be construed to mean what it is held to mean, and what is said to be the fact,—viz., that he did not find the requisite number of names of petitioners on the completed great register, and could only find them by resorting to the affidavits of registration from which the register of 1904 was to be made up,—the council still had jurisdiction to order the election. The sole qualification of a petitioner is the right to vote for a successor to the incumbent whose removal is demanded, and the council derives its jurisdiction to order the election from the filing of a petition by the requisite number of electors so qualified. This petition must, it is true, go first to the clerk, who before he submits it to the council must satisfy himself that it is sufficient. But his decision upon its sufficiency is not final or binding upon the council, and only determines whether it shall be submitted for their consideration, for when so submitted they are empowered, and it is therefore their duty, to determine for themselves whether it is sufficient. (Stats. 1903, p. 575.) If this is what the statute means (and it is the construction for which petitioner contends), the clerk's certificate would seem to be of very little practical consequence as affecting the jurisdiction.

But conceding that the clerk's certificate is essential, and that it must show that he has found the requisite number of names on *"the great register,"* the important question remains: What is the great register to which this charter provision refers? On the first day of January of every even-numbered year the clerk or registrar commences the registration of voters for the ensuing general election, and the work of registration goes on continuously until forty days previous to such election. The great register for that year is then completed, and after the general election in November becomes *functus officio* except for the purpose of determining the right to vote at ensuing local or special elections occuring prior to the close of registration in the next even-numbered year. In case of any such election inscription in this old register secures to the elector the right to vote although a new registration

may be in progress and he may not have registered again. (*People* v. *Worswick,* 142 Cal. 71.) But an elector whose name is not on the old register is also entitled to vote if he has complied with the Registration Law by filing the proper affidavit, and this right to vote is unaffected by the failure of the clerk—if he has failed—to perform the simple and imperative clerical duty of entering his name in a book of registration. In legal contemplation his name is on the great register when he has complied with the law by doing everything he could do, and when in due performance of official duty it ought to be there. Especially is this so in view of the fact that no delay in inscribing his name in the register affects or impairs his right to vote, or the legality of his vote when cast. His ballot must be received by the election officers if his name is on the precinct register, and the file of affidavits constitutes the precinct register, which is all sufficient for the purposes of the election whether the substance of the affidavits has been transcribed in the great register or not.

In view of these conditions it must be assumed that the freeholders of Los Angeles and the members of the legislature in adopting and ratifying this recall amendment to the charter foresaw, and intended to provide for, the contingency out of which this controversy has arisen; the contingency, that is to say, of a recall petition being filed at a time when the right of some electors to vote for a successor to the incumbent would be shown by the old great register completed in a former year, and the right of others to vote could only be shown by reference to the incomplete great register of the current year. What, then, did they mean by directing the clerk to examine the great register for the purpose of determining the sufficiency of the petition? Did they mean that he was to confine his examination to a book which would afford only partial information, and would not disclose the names of all electors entitled to vote, or that he was to examine everything answering to the description of great register from which the requisite information could be obtained? The sole object of the examination being the ascertainment of the number of qualified electors signing the petition, it is my opinion that not only the old register but the new register was intended and that it was the right and duty of the clerk to take account not only of the names actually inscribed in the new register,

but of every name which legally and of right should be there. This is the liberal and beneficial construction which is justly applied to all laws affecting the elective franchise. I do not think we are called upon or justified in construing the law in any other spirit. The people of Los Angeles have chosen to make an experiment in municipal government by applying to municipal business a principle and a practice which obtains universally in the conduct of private business. They propose to appoint their agents not absolutely for a fixed term, but for a term of two years subject to the condition that their authority may be revoked whenever they have forfeited public confidence by any failure of diligence or lack of capacity in dealing with the matters confided to their discretion.

The success or failure of this experiment is exclusively the affair of the people who have chosen to make it, and if it is not an infringement of the constitution it is the business of the courts to let it have a fair trial. It may prove a wise departure, or the reverse. If found to involve evil consequences, no doubt it will be repealed; but in the mean time its policy or impolicy is a question with which the courts are not concerned.