[Civ. No. 922.   Third Appellate District.—December 28, 1911.]

## A. J. LOCHER, Petitioner, v. J. T. WALSH et al., as BOARD OF TRUSTEES OF THE CITY OF AUBURN, Respondents.

MUNICIPAL CORPORATION—ELECTION TO ADOPT INITIATIVE ORDINANCE—SUFFICIENCY OF PETITION—PROVINCE OF CLERK—DUTY OF CITY BOARD—MANDAMUS.—Under the provisions of sections 10 and 11 of the Statutes of 1911 (page 361), governing both the recall of elected city officers and the initiative and referendum of municipal ordinances, the duty and power of determining whether or not a petition for the submission of a municipal ordinance to the electors contains the requisite number of qualified and registered electors to comply with the statute, devolve upon the clerk, and if he has certified the same, in the absence of any showing of fraud or mistake, the functions of the board of city trustees are ministerial, and if they do not adopt the ordinance, it is their official duty to fix a proper time for the election to pass upon the proposed ordinance, and if they refuse to discharge their duty, they may be compelled to do so by *mandamus.*

ID.—PERFORMANCE OF DUTY BY CITY CLERK—WITHDRAWAL OF NAMES OF ELECTORS FROM PETITION NOT ALLOWED.—Where the city clerk has performed his duty and passed upon the qualifications of the petitioners who have applied as electors for the adoption of the proposed ordinance, none of the petitioners has the right thereafter to withdraw from the petition; and the board of trustees of the city have no right to refuse to act in fixing the election on the ground that the names of six electors had been withdrawn from the petition before the board was called upon to act, or had received the clerk's official certificate.

ID.—TIME OF ATTEMPTED WITHDRAWAL OF NAMES—PRIORITY TO PHYSICAL ATTACHMENT OF CERTIFICATE TO PETITION IMMATERIAL.—Where it appears that the clerk had completed his investigation of the qualifications of the petitioning electors, had determined the facts, and had reached a conclusion, and had so certified in writing before any name was attempted to be withdrawn, the fact that such certificate had not been physically attached to the petition at the moment the request for the withdrawal of six names was made cannot be held to render his certificate fruitless and inoperative. It was only required to be attached when presented to the board, and the jurisdiction of the clerk to determine the sufficiency of the petition as filed having been exercised and determined by his certificate, it was too late for any petitioners to withdraw, or to divest the clerk of jurisdiction.

PETITION for writ of mandate to the board of trustees of the City of Auburn, Placer County.

The facts are stated in the opinion of the court.

. Tuttle & Tuttle, for Petitioner.

Lee Chamberlain, J. J. Bauer, and A. C. Lowell, for Respondents.

CHIPMAN, P. J.—*Mandamus.* It appears from the petition that the city of Auburn, Placer county, is a city of the sixth class; that the persons named as defendants are the duly qualified and acting trustees of said city, and that L. F. Morgan is the duly elected and acting clerk thereof; that, on November 22, 1911, a petition was filed with said clerk praying that a certain ordinance relating to the regulation of the sale of spirituous liquors in said city be submitted to a vote of the electors of said city, which said petition was signed by more than thirty per cent of the entire vote cast at the last preceding general municipal election held in said city; that, within ten days thereafter, the said clerk did examine and ascertain, from the records of registration of said Placer county, that said petition was signed by more than thirty per cent of the qualified voters of said city and equal in number to more than thirty per cent of the entire vote cast at said last general municipal election; that said clerk thereupon, on December 2, 1911, did attach to said petition his certificate in the words and figures as follows:

"City of Auburn, Auburn, California, Dec. 2, 1911.
"To the Honorable Board of City Trustees,
        Auburn, Cal.

"Gentlemen: I hereby certify that I have compared the signatures of the persons whose names appear on the foregoing petition and that I find 126 names of registered voters.
                                "L. F. MORGAN,
                                        "City Clerk.

"30% of 419, the number of votes cast at the last city election is required by law. 125.7 is 30%.
                                ."L. F. MORGAN."

That thereafter, on December 4, 1911, the said respondents convened as a board of trustees of said city at a regular meeting thereof and considered said petition, and by a vote of a majority of said board, "wrongfully and without authority of law denied, and still deny, and refused to grant, and still refuse to grant, the request contained in said petition, that the ordinance therein proposed be submitted forthwith to a vote of the electorate of said city, at a special election in said city." Petitioner prays that the said board of trustees be required to forthwith call a special election in said city and submit to the electorate thereof at said election the adoption or rejection of said proposed ordinance.

It appeared that, on December 2, 1911, six of the persons who had signed said petition handed to the clerk a request that their names be withdrawn therefrom. A question of fact here arose as to what the clerk had done up to this time. It appears that, prior to receiving said request, the clerk had written on a piece of paper the certificate set out in the petition (copied above), as to which the clerk made the following statement, which is stipulated to be the fact, viz.: "That this certificate at that time was on my desk, in my place of business, known as Morgan's Shoe Store, on Railroad Street, in the City of Auburn. At that time the petition was inside of my writing desk. This is a desk that has a lid that raises up, and the lid being down, the petition was inside of the desk, and the certificate was on top of the desk, or outside of the desk, and had not been attached to the petition handed to me on November 22, 1911." The certificate was attached to the petition on December 2, 1911, after the clerk had received said request, and in that form was considered by the trustees on December 4, 1911, and denied for the reason that certain signers to the petition had requested their names to be withdrawn therefrom.

This we understand to have been the situation in view of which respondents contend that there was a failure to comply with the statute governing the proceedings and hence they were justified in denying the petition.

The statute relating to the subject necessarily involves an examination of the provisions governing both the recall and initiative which are found in Statutes of 1911, pages 359, 361,

as follows, being section 1, adding a new section to the municipal incorporation act to be known as section 10:

"The procedure to effect such removal or recall shall be as follows: A petition demanding the election of a successor to the person sought to be removed shall be filed with the clerk, which petition shall be signed by registered voters equal in number to at least twenty-five per cent of the entire vote cast at the last preceding general municipal election, and shall contain a statement of the grounds . . . Within ten days from the date of filing such petition, the clerk shall examine and from the records of registration ascertain whether or not said petition is signed by the requisite number of qualified voters, and if necessary the city council . . . shall allow him extra help for that purpose, and he shall attach to said petition his certificate showing the result of said examination. If by the clerk's certificate the petition is shown to be insufficient, it may be amended within ten days from the date of said certificate. The clerk shall, within ten days after such amendment, make the examination of the amended petition and if his certificate shall show the same to be insufficient it shall be returned to the person filing the same, without prejudice, however, to the filing of a new petition in the same effect. If the petition shall be found to be .sufficient, the clerk shall submit the same to the city council, or board of trustees or other governing body without delay, whereupon the council, or board of trustees or other governing body shall forthwith cause a special election to be held within not less than thirty-five days nor more than forty days after the date of the order calling such election, to determine whether the voters will recall such officer, *provided,* that if a general municipal election is to occur within sixty days, the council may, in its discretion, postpone the holding of such election to such general election or submit such recall election at any such general election occurring not less than thirty-five days after such order."

Section 2, adding new section to be known as section 11: "The registered voters of any municipality shall have power to propose by petition, and adopt or reject at the polls, if not adopted ·in the meantime by the city council, . . . any ordinance, act or other measure which is within the power conferred upon the city council, board of trustees

or other governing body. Such ordinance, act or measure
may be proposed by filing with the clerk a petition setting
forth said measure in full signed by voters equal in number
to the percentage hereinafter required. Such petition shall
be executed, signed and verified in the same manner and the
clerk shall perform the same duties in relation thereto, as is
provided in the preceding section concerning petitions for
recall. If the petition be signed by voters equal in number
to thirty per cent of the entire vote cast at the last preceding
general municipal election, and contains a request that said
measure be submitted forthwith to a vote of the electorate
at a special election, then the city council . . . must either
pass the measure without alteration or submit the same to the
electorate at a special election to be held at a date not more
than thirty days from the date of calling the same. If the
petition be signed by voters equal in number to fifteen per
cent of the entire· vote cast at the last preceding municipal
election, or if for any reason any measure proposed by peti-
tion signed by thirty per cent of said voters aforesaid has not
been submitted at a special election as above provided, then
in either event such measure or measures shall be submitted
to the electorate at the next general municipal election which
shall take place at any time after thirty days from the date of
the clerk's certificate of sufficiency; provided that the city
council . . . , shall not in the meantime pass the same without
alteration.''

Respondents contend that the duties of the clerk are
''purely ministerial subject to the supervision of the board.''
Furthermore, they claim that ''said names were withdrawn
before the clerk acted on said petition, and certainly before
the board acted thereon.''

The ·power conferred upon the board and the clerk respec-
tively is shown in *Good* v. *Common Council,* 5 Cal. App. 265,
[90 Pac. 44], under the charter provisions of the city of San
Diego. The duties there devolved upon the clerk and council
in proceedings for the recall of an officer did not materially
differ from the provisions here involved. (See, also, *Daven-
port* v. *Los Angeles,* 146 Cal. 508, [80 Pac. 684].)

In the Good case the court said: ''There is no discretion
vested in the common council in connection with the calling of
this election. That body's functions are purely ministerial,

but if it be conceded that it was vested with some discretion, it does not follow that it can refuse to act. The duty of determining whether or not the petition contains the proper number of signatures and the comparing of them with the great register devolved upon the city clerk. He is the person given authority to hear and determine the question of sufficiency of the petition, and no appeal therefrom is provided and none apparently intended to be given. This is evident from the provision of the act requiring the return of the petition by the city clerk to the petitioner if found insufficient, and which, in effect, negatives petitioner's right of appeal.'' It may be observed that this is evident also from the provision that ''If the petition shall be found to be sufficient [by the clerk] the clerk shall submit the same to the city council or board of trustees or other governing body without delay, whereupon the council or board of trustees or other governing body *shall forthwith* cause a special election to be held,'' etc. We think it plainly apparent from the statute that the procedure provided by it devolves upon the clerk alone the duty and power, in the absence of fraud or mistake, neither of which is alleged here, of determining the sufficiency of the petition in respect of the requisite number of signers, the only question now presented.

The remaining inquiry is as to the right of the six petitioners to withdraw their names from the petition under the circumstances shown. The statute makes no provision for withdrawal of names from the petition. The procedure for proposing an ordinance is initiated ''by filing with the clerk a petition setting forth,'' etc. ''Within ten days from the date of filing such petition the clerk shall examine and from the records of registration ascertain whether or not said petition is signed by the requisite number of qualified voters (i. e., registered voters), . . . and he shall attach to said petition his certificate showing the result of said examination.'' The statute seems to deal with the petition filed with the clerk and not a petition after names have been withdrawn therefrom. Whether a signer may, after the petition has been filed with the clerk, and, during this period of examination of the names to determine the sufficiency of the petition, withdraw his name, is a question not necessarily before us and is not decided. It appears that the clerk had completed

his investigation, had determined the facts, and had so certified before any name had been withdrawn. He had reached a conclusion and had made a finding, in writing, in the form of a certificate, which was, on the same day, attached to the petition and presented to the board. We do not think that, because this certificate had not been physically attached to the petition at the moment the request for the withdrawal of the six names was made, it can be held to render his certificate fruitless and inoperative. The statute prescribes no point of time when he shall attach his certificate to the petition. The most that is required is that the petition presented to the board shall have his certificate attached and this was done. The clerk had jurisdiction to act and he had acted. No power was given by the statute to the board to determine the sufficiency of the petition. The only power conferred was in the clerk, and when he had determined the fact within his power to determine, it was then too late for any signer to withdraw his name and thus defeat the jurisdiction of the clerk. In a note to *Sim* v. *Rosholt*, 16 N. D. 77, [112 N. W. 50, 11 L. R. A. 372], the cases are collected. It was held, in the case cited, that, under the North Dakota Revised Code, relating to the establishment of drains, the jurisdiction of the board of drain commissioners to order such drain is acquired by the filing with the board of a petition as therein required; and, after such jurisdiction is thus acquired and the board has taken action thereunder, it cannot be divested of such jurisdiction by the action of the petitioners in withdrawing their names from the petition. The court examined the cases cited in support of the right to withdraw from the petition before final action thereon. The court said that it will be found from the cases cited "that they do not support the right of petitioners to withdraw their names after the sufficiency of such petition and the qualifications of the petitioners have been passed upon by the board authorized to act thereunder. On the contrary, they will be found to support respondents' theory that after the board had passed upon the sufficiency of such petition, it is thereafter too late to withdraw therefrom." Of course, if respondents' contention be sound, that the board had the power to pass upon the sufficiency of the petition, their conclusion would follow. But here, in our judgment, lies the fundamental error in the argument. The

board was given no such power and it was expressly given to the clerk. Nor was there given to the board any supervisory power over this question of the petition's sufficiency. Cases are cited in the opinion in *Sim* v. *Rosholt,* 16 N. D. 77, [112 N. W. 50, 11 L. R. A. 372], which hold "that the question of jurisdiction is to be determined from the petition as it was when filed, and without regard to the subsequent acts of the petitioner," as was held in *Seibert* v. *Lovell,* 92 Iowa, 507, [61 N. W. 197]. We do not find it necessary, however, to go further than to hold that the clerk had jurisdiction to determine the sufficiency of the petition as filed, and having determined that it was sufficient, and having so found and certified before any request for withdrawal was made, such request was too late for the petitioners to exercise any such right or to divest the clerk of jurisdiction. See question discussed in the recent case of *Conn* v. *City Council of Richmond, ante,* p. 705, [121 Pac. 714].

We think the writ should issue, and it is so ordered.

. Hart, J., and Burnett, J., concurred.