State, ex rel. Miller, v. Berg.

STATE, EX REL. OTTO W. MILLER, APPELLÉE, v. THEO H. BERG, CITY CLERK, APPELLANT.

FILED OCTOBER 16, 1914.   No. 18,538.

1.  **Municipal Corporations:** RECALL OF OFFICERS: PETITION.  When a petition is filed for the removal of a councilman or commissioner under section 5308, Rev. St. 1913, in a city where registration laws are in force, the city clerk, in determining whether or not the petition is signed by the requisite 30 per cent. of the qualified electors, is limited to the voters' register of such city.

2.  ———: ———: ———: VERIFICATION.  Where a petition filed for the removal of a commissioner under section 5308, Rev. St. 1913, is made up of a number of papers, and through oversight any of such papers have not been verified by the oath of one or more of the signers of the same, as required by section 5305, Rev. St. 1913, the city clerk should, on request, permit the attaching of such oath of verification, even after such petitions have been filed.

3.  ———: ———: "HIGHEST VOTE CAST."  The words "highest vote cast," as used in section 5308, Rev. St. 1913, mean the highest vote cast both for and against any candidate for office or proposition voted for at the last preceding general city election of such city.

APPEAL from the district court for Lancaster county: WILLARD E. STEWART, ALBERT J. CORNISH and P. JAMES COSGRAVE, JUDGES.  *Reversed and dismissed.*

*Fred C. Foster, D. H. McClenahan* and *John S. Bishop,* for appellant.

*Frank M. Tyrrell, contra.*

*John L. Webster, amicus curiæ.*

FAWCETT, J.,

The city of Lincoln adopted the provisions of article V, ch. 52, Rev. St. 1913, and is now under the commission plan of government.  Ornan J. King is one of its commissioners.  The defendant, Theo H. Berg, is its city clerk.  A petition and supplemental petition for the removal of Commissioner King, under the provisions of section 5308,

Rev. St. 1913, were filed. The city clerk certified that he had examined the petition and supplemental petition which had been filed in his office on December 5 and December 24, respectively, "and have compared the names on said petition with the voters' register of said city to ascertain whether or not the requisite number of qualified electors to call such an election have signed the same." He further certified: "I further find that said petitions contain 2,544 names; that 64 thereof are duplications; that 75 are illegible; that 1,146 are not registered; that 25 should not be counted because of proof that signatures are not genuine; that 267 were registered at addresses different than shown on petition; and that 967 were registered at addresses given; that the total number of qualified electors on said petition, as shown by the voters' register of said city, is 1,234. I further certify that 1,234 is not 30 per cent. of the highest vote cast at the last general city election held in Lincoln, Nebraska, on May 6, 1913." It was agreed that demand was made upon the city clerk that he use other satisfactory evidence than the registration books of the city of Lincoln, in order to determine whether the names found upon the recall petition were qualified electors of the city of Lincoln and authorized to sign such petition. It was also agreed that the highest vote cast on any proposition or office at the last general election was 7,962, and that the highest vote cast for any candidate, or for or against any proposition, was 5,236. The clerk took 7,962 as "the highest vote." Relator insists that he should have taken 5,236. If the clerk was right in excluding all signers whose names did not appear on the voters' register, the petition was insufficient under either theory. After the clerk had made his certificate, as above set out, relator instituted this action in the district court for Lancaster county, to secure a writ of mandamus ordering the clerk to recount the names on the recall petitions referred to and accept evidence of the qualifications of the signers thereof to vote whose names do not appear on the voters' register of the city, to permit relator to amend the recall petitions by attaching verifications thereto required

by section 5305, Rev. St. 1913, and to find that the meaning of "highest vote" under section 5308, *supra,* is the highest vote cast for any candidate or for or against any proposition submitted at the last general city election. The district court found on all three of these points in favor of the relator, and ordered: "It appearing that the clerk has by mistake of the law not counted and certified the petition in accordance with these findings of law, he is ordered, adjudged and decreed to proceed, count the names on the petition and determine their sufficiency, and report the same to the council, in accordance with the findings herein made." Respondent appeals.

The first point is decisive of the case. The journal entry in the court below states: "This cause came on for hearing and was submitted to the court on the pleadings and evidence. In answer to the question, 'shall the city clerk count the names of qualified electors found upon the recall petition, whose names are not found upon the voters' register of the city of Lincoln for the year 1912?' it is agreed that the city clerk rejected the names found on the petition and not found on the voters register. The court finds that the right of the voters to petition under the initiative, referendum, and recall law is the same as his right to vote at the election petitioned for. The clerk should in the first instance reject the names of petitioners, whose names do not appear upon the voters' register; if, however, and petitioner produces sufficient proof to the clerk that he is a qualified elector, entitled to vote, showing a satisfactory excuse, under the law, for not having registered, then in such case his name should be counted as a petitioner." We are unable to concur in this construction of the act. Section 5308 provides: "Any of such councilmen may be removed at any time from office by the qualified electors of any such city. The procedure to accomplish the removal of any incumbent of such office shall be as follows: A petition signed by such electors equal in number to at least thirty *per centum* of the highest vote cast at the last preceding general city election de-

97 Neb. 5

manding an election of a successor to the person sought to be removed, and naming the candidate. or candidates proposed for election to succeed him, shall be filed with the city clerk, which petition shall contain a general statement of the grounds upon which the removal is sought. Within ten days from the date of filing such petition, the city clerk shall examine it and from the voters' register, if the petition be filed in any city where registration laws are in force, or if not, then from such source as may be available to such clerk, ascertain whether or not said petition is signed by the requisite number of qualified electors, and, if necessary, the council shall allow such clerk extra help for that purpose, and the clerk shall attach to said petition his certificate showing the result of such examination." It then provides that, if the clerk's certificate shows that it is insufficient in point of numbers signed, it may be amended within ten days from the date of the clerk's certificate, by the filing of a supplemental petition signed and sworn to as in the case of the original petition, "and the clerk shall, within ten days after such supplemental petition be filed, make a like examination of the supplemental petition, and if the certificate shall show the supplemental petition, together with the original petition, to contain the requisite number of signatures, the clerk shall submit such original petition and supplement together with his certificates, without delay, to the council," etc. This statute appears to us to be very plain, and, if the case were before us as a case of first impression, we would not hesitate to hold that, when a petition of recall is filed for the removal of a public official under the act in question, in a city where registration laws are in force, the clerk, in determining whether or not the petition is signed by the requisite 30 per cent. of the qualified electors, is limited to the voters' register of such city. But we are not left to the necessity of deciding the case as one of first impression. Other eminent courts have passed upon this question, under statutes almost identical with ours, and we now have the benefit of their holdings and of their reasoning in support thereof. *State v. Russell,* 124

Wis. 548; *Davenport v. City of Los Angeles,* 146 Cal. 508; *Chesney v. Jones,* 31 Okla. 363; *Floyd County v. State,* 112 Ga. 794, which also holds in accordance with *Gavin v. City of Atlanta,* 86 Ga. 132, that "the authorities generally concur that, where the law prescribes how the majority or two-thirds shall be ascertained, that method prevails." See, also, 2 Dillon, Municipal Corporations (5th ed.) sec. 468, where it is said: "When the terms under which the power of a motion is to be exercised are prescribed, they *must be pursued with strictness.*"

Other authorities are cited, strongly sustaining the rule announced in these cases, but we will not burden this opinion with a citation of them, for the reason that it appears to us that the construction given statutes like the one under consideration, by the courts above cited, is the only reasonable construction which can be given them. This construction of the act under consideration in no manner violates section 22, art. I of the constitution, that "all elections shall be free; and there shall be no hindrance or impediment to the right of a qualified voter to exercise the elective franchise." The section of the act under consideration does not assume to place any hindrance or impediment in the way of a qualified voter to exercise the elective franchise. It is not dealing with the question of election. It simply is determining who shall have the right, after an election has been held and an official, who was elected at such election has taken his office, to petition for the removal of such official before the expiration of his term of office. The right of any citizen, whether a voter or not, to petition for the removal from office of a public official is not a right guaranteed by the constitution. It is simply a privilege granted by the legislature, and it cannot be doubted that the legislature in granting any privilege may impose such conditions on the exercise of it as it sees fit. And so, in the act under consideration, the legislature has said that a qualified elector, whose name appears upon the voters' register, may, if he pleases, petition for the removal of a public official from office, and if he can secure the signatures of enough other qualified

electors, whose names appear on the voters' register, to join with him, he may then have the question submitted to the voters generally, at an election called for that purpose, at which election the act does not attempt to hinder or disfranchise any legal voter. At such election all may vote. *State v. Babcock*, 21 Neb. 187. The legislature, in the act granting the privilege of petitioning for the removal of a public official, has prescribed the procedure to be followed in exercising the privilege in language which is not ambiguous or uncertain. That procedure, as stated by Mr. Dillon in the quotation above given, *"must be pursued with strictness."* The conclusion we have reached on this point renders it unnecessary to consider any of the others; but, for the guidance of city clerks in the future, we will consider the second and third points.

The second point involves a consideration of section 5305, *supra,* which provides that the signatures to the petition for a recall need not all be appended to one paper, but requires that at least one of the signers of each paper shall make oath that the statements in the petition are true, as he verily believes, that the signers were at the time of signing legal voters of the city, and shall also state in the affidavit the number of signers in the petition or part thereof sworn to by him, at the time he makes such affidavit. The petition filed with the city clerk consisted of a number of separate papers, several of which were not verified by the oath or affidavit of any of the signers of the same. The district court found that these parts of the petition did not comply with the law, but further found "that, if relator asks leave to attach such verification to such paper within a reasonable time, he should be permitted to do so, if he can." Respondent argues that, as this finding of the court confirmed his contention that the petition as filed was not a compliance with the act, the court should have dismissed the action, and cites *State v. Weston,* 67 Neb. 175, and other Nebraska cases, in support of his contention. As a general proposition, respondent's contention is sound. It must be conceded that the holdings of this court have been that in mandamus the

State, ex rel. Miller, v. Berg.

right of a relator to relief must be clear and exist at the time the relief is sought, or his action cannot be maintained; but we hardly think the rule is applicable here. What the relator was complaining about was that the clerk was refusing to permit him to attach the verifications after the papers had been filed. We think if petitions are filed in a case of this character, which the voters have signed, they should not be deprived of their right to have their petitions considered because of the fact that the circulators of them neglected, through mere oversight, to attach the oath of verification. In such case we think the clerk should permit the formality to be observed even after the petitions have been filed.

The third point involves the construction of the language in section 5308, *supra,* that the petition shall be "signed by such electors equal in number to at least thirty *per centum* of the highest vote cast at the last preceding general city election." What is meant by the words "highest vote cast?" It is shown by the record that at the last city election, on May 6, 1913, the total number of persons voting was 8,549; that the total vote cast on the excise amendment was 7,962; that the highest vote cast for or against any proposition or person was 5,236, which were cast for commissioner Dayton. The clerk found that "the highest vote" was that cast both for and against the excise amendment, while relator contends he should have taken the highest vote cast for *or* against any proposition or office, which would be the vote cast for Mr. Dayton. The district court sustained relator's contention. This we think was error. The language used by the legislature appears to us to be clear and unambiguous: "A petition signed by such electors equal in number to at least thirty *per centum* of the highest vote cast at the last preceding general city election." If the legislature had meant to say the highest vote cast at such election for or against any candidate for office or proposition submitted, it would have been easy to have said so. On the other hand, if it had intended to say that the petition should be signed by electors equal in number to 30 per cent. of all votes cast

at the election, it would have been easy to have said so; but the legislature did not use either of these terms. It used the expression "the highest vote cast." What was the highest vote cast at this election? It was the vote cast on the excise amendment, which was 7,962. The city clerk was right in using that number as the basis for his computation.

It clearly appearing that the respondent was acting well within the provisions of the act under consideration, and that the petition did not contain 30 per cent. of the qualified electors of the city, as shown by the voters' register, he was without authority to do otherwise than certify that the petition was insufficient.

The judgment of the district court is reversed and the action dismissed.

REVERSED AND DISMISSED.

ROSE, J., not sitting.

REESE, C. J., concurring in part.

I concur in the judgment rendered in this case, but do not concur in the construction given to section 5308, Rev. St. 1913, as to the meaning of the words "the highest vote cast." The contents of the section need not be here copied, as it is sufficiently set out in the majority opinion. The procedure requires a petition signed by electors equal in number to at least 30 *per centum* of the highest vote cast at the preceding election, in order to confer authority upon the city officers to call the election. I cannot read that section in any other way than as requiring 30 *per centum* of all the votes cast at the election. That certainly would be "the highest vote" cast, and that is what the statute says in plain language. The clear purport of this provision is to prevent constant agitation at the expense of the city, when persons are dissatisfied with the official action of some officer. "At least thirty *per centum*" of the voting strength of the city must show their dissatisfaction before the expense and agitation of an election shall be submitted to by the city government.