[Civ. No. 1374.    Third Appellate District.—March 20, 1915.]

## G. W. MINGES, Petitioner, v. THE BOARD OF TRUSTEES OF THE CITY OF MERCED et al., Respondents.

ELECTION LAW — REGISTRATION QUALIFICATION OF ELECTORS.—Registration is not a qualification of an elector and cannot add to the qualifications fixed by the constitution, but it is to be regarded as a reasonable regulation by the legislature for the purpose of ascertaining who are qualified electors in order to prevent illegal voting.

ID.—ELECTORS—DEFINITION OF.—A qualified elector is a person whose qualifications measure up to the constitutional standard, while a *registered* qualified elector is a person who possesses the constitutional qualifications and is registered in accordance with the registration statute.

ID.—INITIATIVE PETITION—QUALIFICATIONS OF SIGNERS—CONSTRUCTION OF CERTIFICATE OF CITY CLERK.—An initiative petition to submit a municipal ordinance to a vote of the electors of the municipality sufficiently shows that the persons signing the petition were at the time of such signing *registered* qualified electors of such city, as required by section 1083a of the Political Code (Stats. 1913, p. 225), where the certificate of the city clerk attached to such petition recited that such officer had examined the same and from the records of registration, to wit: the great register of his county, had ascertained that said petition was signed by the requisite number of qualified electors, notwithstanding that such certificate contained

no recital that such register was the only existing great register of such county.

ID.—MUNICIPAL ORDINANCE—TIME OF TAKING EFFECT—INITIATIVE AND REFERENDUM ACT NOT CONFLICTING.—A proposed municipal ordinance is not in conflict with the Initiative and Referendum Act in providing that the ordinance shall take effect and be in force on a date later than that provided by the act should the election be called within the shortest time permissible under such act and the ordinance be adopted.

ID.—TIME OF TAKING EFFECT OF INITIATIVE MEASURES.—The constitution makes no provision as to the time when initiative measures proposed by the people of the state or by the electors of a county, city or town, shall take effect, but the power given by the constitution to initiate such a measure carries with it the power to prescribe when it shall become effective, just the same as the power to enact a law by the legislature implies the power to fix the time of its operation; and where such measure omits to fix such time, the Initiative Act prescribes the time.

APPLICATION for a Writ of Mandate originally made in the District Court of Appeal for the Third Appellate District to compel the Board of City Trustees to adopt an ordinance or call a special election.

The facts are stated in the opinion of the court.

Andrew R. Schottky, for Petitioner.

F. W. Henderson, for Respondents.

CHIPMAN, P. J.—It is sought by plaintiff to compel defendants by writ of *mandamus* either to adopt and pass a certain ordinance, or to call a special election at which said ordinance should be submitted to a vote of the electors of said city. No question arises as to the sufficiency of the petition in respect of its form or the number of petitioners or that they had the right, under the initiative and referendum statute, approved January 2, 1912 (Stats. 1911, (Ex. Sess.), p. 131), to propose the said ordinance as an initiative measure.

The objections arise on a general demurrer and are: 1. That it nowhere appears that the signers of the petition submitting the proposed ordinance were registered qualified electors of the city of Merced at the time they signed said

petition; 2. That section 10 of the proposed ordinance is in conflict with the Initiative and Referendum Act of 1911, *supra*.

1. Section 1083a of the Political Code (Stats. 1913, p. 225) provides: "Wherever, by the constitution or laws of this state, any initiative, referendum, recall or nominating petition is required to be signed by qualified electors, only an elector who is a registered qualified elector at the time he signs such petition shall be entitled to sign the same."

In the petition to the board of trustees it is declared that "the undersigned, each of whom is a resident and qualified elector of and in the city of Merced, respectfully propose," etc.

The certificate of the city clerk reads as follows:

"State of California, County of Merced, ⎱ ss.
        City of Merced.                        ⎰

"I, J. D. Wood, City Clerk of the City of Merced, do hereby certify that the foregoing petition was presented to me on the 19th day of December, 1914; that I have examined the same and from the records of registration, to wit, the great register of said County of Merced, have ascertained that said petition is signed by the requisite number of qualified electors.

"I do further certify that the entire vote cast within said City of Merced for all candidates for governor of said State at the last preceding general election at which such governor was voted for was 1373; that said petition is signed by more than 280 electors, the number of which is not less than twenty per cent of said entire vote.

"In Witness Whereof, I have hereunto set my hand and affixed the seal of said City, this 28th day of December, 1914.
        (Seal of said City.)            "(signed)   J. D. WOOD,
                                City Clerk of said City of Merced."

Except certain persons especially mentioned, the constitution, article II, section 1, prescribes who are electors, i. e., persons "entitled to vote at all elections which are now or may hereafter be authorized by law."

The constitution thus determines the qualifications of an elector and it was held, in *Bergevin* v. *Curtz*, 127 Cal. 86, [59 Pac. 312], that registration is not a qualification of an elector and cannot add to the qualifications fixed by the con-

27 Cal. App.—2

stitution; but it is to be regarded as a reasonable regulation by the legislature for the purpose of ascertaining who are qualified electors in order to prevent illegal voting.

A qualified elector, then, is a person whose qualifications measure up to the constitutional standard. A *registered* qualified elector, we take it, is a person who possesses the constitutional qualifications and is registered in accordance with the registration statute.

If the signers of the petition, when they signed the petition, were in fact qualified electors as above defined, and if that fact appears by the certificate of the city clerk showing that they are registered, it seems to us the requirements of the statute are fully met. The *registered* qualified elector entitled to sign the petition and to vote in the city of Merced is a qualified elector whose name appears upon the records of registration, to wit, upon the great register of the county of Merced, at the time he signed the petition. Now, this is precisely what the clerk certified to be the fact, and we cannot see what more should be required to show that the persons signing the petition were at the time "registered qualified electors." It is true the certificate of the clerk might have stated, and perhaps it would have been better if he had so stated, that the great register examined by him was the then and only existing great register of the county. But the petition shows that all the signatures were attached thereto on or subsequent to November 17, 1914, and prior to December 19, 1914, when the petition was presented to the clerk. We must assume that in the discharge of official duty he examined the great register on which the petitioners' names appeared and that it was the great register then in force.

The Initiative Act of 1911, in section 1, provides that the petition by which "any proposed ordinance may be submitted to the legisative body of such city or town" shall be "signed by *qualified electors* of the city or town not less in number than the percentages hereinafter required." The affidavit which the statute provides shall be made respecting each signer must show that he is "a qualified elector of the city or town." The act then provides "that within ten days from the date of filing such petition the clerk shall examine, and from the records of registration, ascertain whether or not said petition is signed by the requisite number of qualified electors and he shall attach to said petition his certificate

showing the result of said examination.'' It will be observed
that the act deals with qualified electors and says nothing
about *registered* qualified electors. It is only in section 1083a
of the Political Code that mention is made of *registered* quali-
fied electors. This section was added to the Political Code
in 1913 (Stats. 1913, p. 225). It adds nothing to the proce-
dure prescribed by the act of 1911, and only requires that it
appear by the certificate of the clerk that the signers to the
petition are registered qualified electors. This additional
qualification can only be ascertained from the records of
registration, to wit, the great register, and when thus ascer-
tained and duly certified to, the law is, in our opinion, fully
complied with. There is nothing in *Davenport* v. *City of
Los Angeles,* 146 Cal. 508, [80 Pac. 684], casting any doubt
upon our conclusion. In that case (which was one of recall
of an officer) the law required the clerk to ascertain the num-
ber of electors by an inspection of the great register. His
certificate failed to show that he ascertained the requisite
facts from the great register.

In the view we have taken of the question we are but fol-
lowing the injunction found in the Initiative Act that ''all
the provisions of this statute are to be liberally construed
for the purpose of ascertaining and enforcing the will of
the electors.''

2. The proposed ordinance had for its object the regula-
tion, sale, and distribution of alcoholic liquors within the city
of Merced and to provide penalties for its violation. Section
10 provides as follows: ''This ordinance shall take effect and
be in force on the first day of April, 1915, and any money
that shall have been paid to the city of Merced before said
date as license money for the sale of alcoholic liquors in said
city of Merced after said first day of April, 1915, shall be
refunded and repaid to the person or persons who have paid
the same.''

The Initiative Act provides that if the petition accompany-
ing the proposed ordinance be signed by the requisite num-
ber of electors and contains a request that if such ordinance
be not adopted it be submitted forthwith to a vote of the
people at a special election (the petition made such request),
''then the legislative body shall either: (a) Pass such ordi-
nance without alteration at the regular session at which it is
presented and within ten days after it is presented; or (b)

Forthwith the legislative body shall proceed to call a special election at which such ordinance, without alteration, shall be submitted to a vote of the electors of the city or town.''

The alleged conflict between section 10 of the proposed ordinance and the Initiative Act is claimed to exist in this—that, should the ordinance be submitted to a vote of the people, the Initiative Act provides, among other things, that ''if a majority of the qualified electors voting on said proposed ordinance shall vote in favor thereof, such ordinance shall thereupon become a valid and binding ordinance of the city or town, and be considered adopted upon the date that the vote is canvassed and declared by the canvassing board, and go into effect ten days thereafter.'' Section 1 of the act provides that ''When a special election is to be called under the terms of this section it shall be held not less than thirty nor more than sixty days after the date of the presentation of the proposed ordinance to the legislative body, and shall be held as nearly as may be in accordance with the election laws of the state.''

Respondent points out that if the election had been called within the shortest time possible, the election would have been called on February 4, 1915; that, ''under section 1278 of the Political Code, the canvassing board would have met on the 8th day of February, 1915, and the ordinance would have gone into effect on the 18th day of February, 1915; such a result,'' continues the brief, ''would be in direct conflict with the provisions of the ordinance which are to the effect that the ordinance shall not take effect until the first day of April, 1915.'' Hence the invalidity of the ordinance for the reason that neither the municipality has power, nor have the people by initiative, to pass an ordinance in conflict with the general law. The conclusion reached by respondents is that in all cases where ordinances are proposed under the powers reserved to the electors through the initiative by section 1 of article IV of the constitution, the proposed ordinance should be silent as to when it is to take effect, leaving the initiative act to fix the date—in short, that the electors have no power to say when the proposed ordinance shall take effect and in doing so the ordinance would be invalid.

The constitution makes no provision as to the time when acts of the legislature shall go into effect. Undoubtedly the legislature may designate the time. When it fails to do so,

the Political Code, section 323, declares: "Every statute, unless a different time is prescribed therein, takes effect on the sixtieth day after its passage."

The constitution, section 1, article IV, reads: "The legislative power of this state shall be vested in a senate and assembly which shall be designated 'The legislature of the state of California,' but the people reserve to themselves the power to propose laws and amendments to the constitution, and to adopt or reject the same, at the polls independent of the legislature, and also reserve the power, at their own option, to so adopt or reject any act, or section or part of any act, passed by the legislature. The enacting clause of every law shall be 'The people of the state of California do enact as follows.' The first power reserved to the people shall be known as the initiative." Then follow provisions prescribing the mode of exercising this power, reserved to the people generally, in respect of enacting general laws to be voted upon by the qualified electors of the state. The constitution then reads: "The initiative and referendum powers of the people are hereby further reserved to the electors of each county, city and county, city and town of the state, to be exercised under such procedure as may be provided by law. . . . In the submission to the electors of any measure under this section, all officers shall be guided by the general laws of this state, except as is herein otherwise provided. This section is self-executing, but legislation may be enacted to facilitate its operation, but in no way limiting or restricting either the provisions of this section or the powers herein reserved."

The legislature, by the act of 1911, provided the procedure for the exercise of the power to initiate measures by counties, cities and towns, but nothing in the act was intended to limit or restrict the power given by the constitution, and the constitution expressly forbids any limitation or restriction on the power by the enactment of legislation. The power to initiate legislative measures reserved to the electors of counties, cities and towns (except in cities or cities and counties having charters adopted under the provisions of section 8 of article XI of the constitution) is as comprehensive as the power residing in the legislature. The constitution makes no provision as to when initiative measures proposed by the people of the state or by the electors of a county, city or town, shall take effect. The power to initiate a measure

for the government of the people of a county, city or town, carries with it the power to prescribe when it shall go into effect the same as the power to enact a law by the legislature implies the power to fix the time when it shall take effect. The statute, as we have seen (Pol. Code, sec. 323), fixes the time when the legislature has failed to do so. The Initiative Act of 1911, in our opinion, was intended to accomplish a like object in cases where an ordinance proposed by the electors of a county, city or town fails to prescribe the time when it is to take effect. The act does not, in words, as does the Political Code, provide that the ordinance shall go into effect at a specified time "unless a different time is prescribed therein," but, fairly construed, we think this is its meaning. The suggestion of respondent that if the time can be fixed by the proposed ordinance for it to take effect, the date might be postponed to some remote period a decade hence, presupposes that the electors may incorporate an unreasonable or absurd provision on this subject. The power is not to be measured by the possibility of its being abused. We must assume a reasonable exercise of it by the electors.

The power residing in the legislature to declare when its acts shall take effect is open to the same objection now urged respecting the power to initiate measures but no one could question its exercise by the legislature. As the power to initiate legislative measures is as comprehensive as the power residing in the legislature, the power to say when an act shall take effect resides alike in both the legislature and in the electors when proceeding by the initiative.

In the present case the time fixed for the ordinance to take effect is April 1, 1915. Obviously, should respondents refuse to adopt the proposed ordinance and resort to the alternative of submitting it "forthwith" to the electors, the result cannot be known until after April 1, 1915. But this, we think, should not prevent its submission to a vote at the polls. The provision as to its taking effect would be inoperative and the statute would fix the time. The main object to be achieved by the electors in proposing the ordinance was to bring about the regulation of the liquor traffic and that object may not be thwarted by obstructions which it is within the power of the board of trustees or by the electors resorting to the referendum or otherwise to interpose, and thus making inoperative the provision fixing the time when the ordinance

shall take effect. The reasonable view to take of such a situation, and one warranted, we think, by canons of construction, is that resort must be had to the Initiative Act itself to determine when, if adopted by the board of trustees or by the electors at the polls, the ordinance shall take effect. Any other construction would make easy the defeat of every measure proposed by the initiative in which the time is fixed for it to take effect.

Our conclusion is that the peremptory writ should issue as prayed for and that respondents should either adopt the ordinance or forthwith submit it to a vote of the electors of the city of Merced in accordance with the requirements of the Initiative Act, and it is so ordered.

Burnett, J., and Hart, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on May 17, 1915.