# WILLIAM E. COLLIER *vs.* CHARLES H. CARTER ET AL., BOARD OF SUPERVISORS OF ELECTIONS, &c.

*Elections and Voters—Petition to Strike Name from Registry.*

Code, Art. 33, sec. 24, provides that any person aggrieved by the action of a board of registry of voters in registering or failing to erase the name of any fictitious, disqualified or deceased person, may file a petition in the Circuit Court, etc., asking to have the registry corrected, *Held*, that no petition asking to cause the name of a disqualified person to be stricken from the registry can be filed in Court until after the

board of registry has taken action upon such application, because, under the statute, the petition to the Court is in the nature of an appeal from the action of the registers.

Appeal from the Court of Common Pleas (DOBLER, J.)

The cause was argued before McSHERRY, C. J., FOWLER, PAGE, BOYD, PEARCE, SCHMUCKER and JONES, JJ.

*Thos. Ireland Elliott*, for the appellant.

*Wm. S. Bryan, Jr.*, (with whom was *W. Starr Gephart* on the brief), for the appellees.

JONES, J., delivered the opinon of the Court.

The decision of this case has already been made by this Court in its *per curiam* announcement of its conclusions therein on the day the case was argued. The reasons leading to these conclusions will be here briefly given. The case was brought here on appeal from the action of the Court of Common Pleas refusing and dismissing a petition filed in that Court by the appellant to have stricken from the registration lists of the 14th election precinct of the 4th ward of the city of Baltimore, the name of one Daniel J. B. Brady who was at the time borne upon the said lists as a qualified voter. The petition in question stated that the appellant was "a qualified voter of Baltimore City" and then, to quote the language of the petition, that "he believes and therefore charges that Daniel J. B. Brady, who is registered as a qualified voter in the fourteenth election precinct of the fourth ward from 620 East Pratt street does not reside at the dwelling house given in the entries relating to him on the registration books, and is not a resident of the said precinct. Wherefore, he prays the Court that the name of the said Daniel J. B. Brady be stricken from the registries of said election precinct."

It will be observed that the petition contains no suggestion of having for its object a review of any action taken or judgment rendered elsewhere, but simply asks of the Court in which it was filed that it should revise and correct to the ex-

tent indicated the registry of voters ·which the law provides shall be made in the various election districts and precincts in the State. What authority has been, or could be conferred upon the Court to exercise such a function is preliminary to all other inquiry. And this inquiry is not to be made here as though we were considering the question suggested upon a demurrer to the petition for the fact is, as the record discloses, that prior to the filing of the petition in question in the Court below no other tribunal had been called upon or given the opportunity to consider and determine · the question which it raised, or to adjudicate the rights of the parties concerned.

The jurisdiction to be exercised by the Courts in the administration of the law relating to the registration of voters is conferred in sec. 23 of Art. 33 of the Code, as enacted by Act of 1896, ch. 202 (see now sec. 24, Art. 33, Code, 1904), in the following terms. "Any person who feels aggrieved by the action of any board of registry in refusing to register him as a qualified voter, or in erasing or misspelling his name, or that of any other person on the registry, or in registering or failing to erase the name of any ficticious, deceased or disqualified person, may, at any time, either before or after the last session of the Board of Registry, but not later than the Saturday next preceding the election, if in the city of Baltimore, and not later than the Tuesday next preceding the election, if in the counties, file a petition, verified by affidavit, in the Circuit Court for the county, or if the cause of complaint arises in Baltimore City in any Court of Baltimore City, setting forth the ground of his application, and asking to have the registry corrected." Then is prescribed the proceedings which shall be had upon the petition so authorized to be filed; and among other things it is provided "the entries made in such registration books shall not be considered by the Court as evidence of any fact therein stated, but the case shall be heard *de novo.*" Further on in the section, in making provisions for costs, occurs this language "the cost of proceedings in all such appeal cases shall from and after the passage of this Act be one-half of those provided for under existing law."

The nature and extent of the jurisdiction conferred upon the Courts by the foregoing provision of the Article of the Code, embracing the law in regard to elections and registration, would seem to plainly appear from the language and terms employed in so conferring it. It is a jurisdiction that is special, limited and peculiar, and is to be exercised within the limits prescribed by the statute which confers it, and strictly in conformity with the authority given thereby. *Boarman* v. *Patterson, et al.,* 1 Gill, 372 (*Brantly's Ed.*, 283). The basis of the authority conferred upon the Courts to strike off names from the registration lists appears from the terms of the provision of the section of the Code just quoted plainly to be the "failing to erase the name of any fictitious, deceased or disqualified person" by the Board of Registry. The party who is authorized to invoke the jurisdiction of the Court is one who has been "aggrieved by the action of any Board of Registry." Such board could not take action without having something before it to be made the subject of action. Looking to the objects for which the official body in question exists the taking of action by it is inseparable from the making up of a judgment as the basis of such action. The doing or the refusing to do a particular thing to which its judgment has been applied would be action; but the mere not doing something which it is authorized to do or not to do upon applying its judgment, but to which its judgment has never been applied could, in no proper sense, be said to be action.

We take it therefore that the terms "refusing" and "failing" as used in sec. 23 of Art. 33 in question necessarily have reference to what may be termed negative action in cases that have been specifically brought under the judgment of the Board of Registry. This is enforced from what has been noticed as occurring later in the section of the Code referred to here. When it is said that cases arising under the section that may be brought into Court "shall be heard *de novo*" there is the implication that they have been already once heard before being heard by the Court. If they have never before been heard they are necessarily heard *de novo*; and in that case it

would be inappropriate to expressly and specifically provide
that they are to be so heard by the Court.   Equally signifi-
cant is the reference to these cases in the provision in regard
to costs where they are termed "such appeal cases," thus sig-
nifying, that, in the contemplation of the law, they are cases
in which the judgment of another tribunal is to be reviewed.

In the three sections of Art. 33 of the Code immediately
preceding sec. 23—being secs. 20, 21 and 22, and now in sec.
25 as amended and re-enacted by the Act of 1904, ch. 254,
and made applicable particularly to the city of Baltimore, are
provisions directing that the Boards of Registry, when sitting
for revision of the registration lists, shall of their own initiative
or at the instance of other persons of the description desig-
nated therein, note for erasing from these lists, all names of
persons which, for any reason, are known, supposed or sus-
pected not to be entitled to remain thereon; and prescribing
how notice of intended action by the Board of Registry in the
cases so noted shall be given; how said boards are to proceed
to obtain all practicable information in reference to such cases
as a basis of action thereon, and how said boards shall then
proceed to take action upon the same.   It is further provided
(sec. 22) that the Boards of Registry shall, at the same time
that they return to the Supervisors of Elections the registers of
voters made by them, as they are required to do, return also
"the alphabetical list of the names, color and addresses of the
persons registered and erased by them."   Which lists are to
be printed and posted by the Supervisors of Election in promi-
nent places in the respective voting precincts, and copies
thereof printed sufficient to supply all demands for the same
and to be sold at five cents per copy.

It seems quite evident from a reading of the sections of the
Code, relating to registration, last referred to, and from the
nature of the provisions they contain, that to the Boards of
Registry was assigned the duty of inquiring into, and making
the subject of their action, *all* cases of persons not entitled to
remain upon the registration lists in their respective jurisdic-
tions, and that with that duty performed by them there was,

in the contemplation of the law relating to registration, an end of all original inquiry into such cases. Careful provision is made for giving, as far as practicable, to parties to be affected in these cases, notice of intended action by the Boards of Registry as preliminary thereto; and after action taken means are prescribed to notify it to all who may be affected by it or may desire to call it in question. Sec. 23, enacted in immediate connection with the provisions of Art. 33 which have been referred to, was intended, by providing an appeal to the Courts to give to those who might be aggrieved by error in the action of the Boards of Registry under the said provisions, the means of redress.

In the case at bar nothing was done during the sittings of the Board of Registry in the voting precinct mentioned in the appellant's petition looking to action therein by the Board of Registry; no notice, of any kind, was given or attempted to be given to the party whose name the petition here seeks to have erased from the voting lists; and no action, of any sort, was taken, or attempted to be taken, by or before, the Board of Registry in the precinct in which the voter was registered. The petition in the case was not filed until the 29th of October, sometime after the final sitting of the Board of Registry, and after the close of the whole work of registration. It, therefore, was not and could not be, based upon any action of the Board of Registry by which the appellant was aggrieved and the Court was without jurisdiction to entertain it. Other considerations, more general in character, might be suggested as going to enforce the views herein expressed; but it seems clear from the more specific reasons which have been assigned that the order of the Court below must be affirmed.

> *Order affirmed with costs to the appellees.*

(Decided *per curiam* November 4th, 1904. The foregoing opinion was filed January 19th, 1905.)