### UNITED STATES v. KNIGHT.

(District Court, D. Montana, Helena Division. August 1, 1923.)

No. 222.

1. **Aliens ⮞71½—Suit to cancel certificate of citizenship may be brought by district attorney without affidavit showing cause.**

   Act June 29, 1906, § 15 (Comp. St. § 4374), requiring district attorneys, on affidavit showing good cause therefor, to institute proceedings to cancel certificates of citizenship for fraud or illegality, is inclusive and not exclusive, and does not preclude district attorney from instituting suit on his own motion without such affidavit.

2. **Aliens ⮞71½—Defendant's last known residence should be alleged in suit to cancel certificate of citizenship.**

   In suit to cancel certificate of citizenship, where defendant is living abroad, his last known residence in the country should be alleged, in order that it may affirmatively appear by direct and positive averment that court has jurisdiction.

3. **Aliens ⮞71½—Venue of suit to cancel certificate of citizenship is in district in which defendant last resided.**

   Though Act June 29, 1906, § 15 (Comp. St. § 4374), authorizing suits to cancel certificates of citizenship, does not expressly prescribe venue when defendant resides abroad, its implications and analogies, the substantial nature of the issue, and purpose and circumstances of venue and notice, require that suit be brought in the district in which defendant had his last known residence within the country.

4. **Aliens ⮞71½—Constitutional law ⮞309(2)—Suit may be maintained to cancel certificate of citizenship, though defendant abroad, and service may be made by publication.**

   In view of citizen's relations and obligations to the government, jurisdiction exists to cancel certificate of citizenship, though defendant is living abroad, and service of the subpœna by publication constitutes due process.

5. **Evidence ⮞333(1)—Statute making certificates of consuls evidence not to be extended by implication.**

   As Act June 29, 1906, § 15 (Comp. St. § 4374), requiring consuls to furnish names of naturalized citizens who have taken permanent residence within their jurisdictions and making their statements duly certified admissible in evidence, invades law against hearsay evidence, it is not to be extended by implication.

---

⮞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

6. **Evidence** ⟨key⟩333(1)—**Competency of consul's certificate limited to matters competent, if he were testifying as witness.**

Under Act June 29, 1906, § 15 (Comp. St. § 4374), making consul's statements, when duly certified, admissible in evidence on question of permanent residence abroad of naturalized citizen, competency of the certificate does not cover everything that consul incorporates, but only that which would be relevant, material, and competent if he were testifying on oath as to the facts it is his duty to report.

7. **Aliens** ⟨key⟩71½—**Evidence held insufficient to show permanent residence abroad within five years after issuance of certificate.**

Proof that defendant, within 11 months after obtaining certificate of citizenship, went to South Africa on his employer's business, and was detained there for 12 years, but then evinced his intent to return to the United States for permanent residence when his employer desired, and refused to surrender the certificate to a consul, *held* not sufficient proof that he acquired domicile abroad within 5 years after issuance of certificate, within Act June 29, 1906, § 15 (Comp. St. § 4374).

8. **Domicile** ⟨key⟩4(2)—**Change of residence with intent to return on contemplated happening of event not change of domicile.**

Change of abode with present intent to return to former abode on contemplated happening of event in indefinite future, such as dispatch of business, recovery of health, end of employment, or recall by employer, is not change of residence or domicile.

9. **Domicile** ⟨key⟩4(2)—**Change of residence with intent to remain indefinitely constitutes change of domicile, notwithstanding intent or hope to return some time.**

If person removes to another place with present intent to abide there indefinitely, and not merely until contemplated happening of contingency, he abandons his old residence or domicile, and acquires a new one, notwithstanding vague intent or hope to return some time.

10. **Aliens** ⟨key⟩71½—**Evidence must be clear and convincing to authorize cancellation of certificate.**

Nothing will warrant cancellation of certificate of citizenship but clear, unequivocal, and convincing evidence that in quantity and quality inspires confidence and produces conviction of truth of the charge virtually beyond reasonable doubt.

In Equity. Suit by the United States against Sidney E. Knight. Decree for defendant.

John L. Slattery, U. S. Atty., of Helena, Mont.

BOURQUIN, District Judge. [1] This suit is to cancel defendant's certificate of citizenship. Subpœna was served by publication, defendant made default, and final hearing is ex parte. Nevertheless the inescapable responsibility of courts for their decisions, and their like obligation to righteousness therein, whether cases are ex parte or contested, demand careful scrutiny of the integrity of the proceedings and of the sufficiency of the evidence. Hence brief reference to features that otherwise might be deemed fatal defects that escaped the court. It does not appear the suit is upon any the affidavit of section 15, Act June 29, 1906 (Comp. St. § 4374), but whether the suit could be maintained in absence of statute (Johannessen v. U. S., 225 U. S. 240, 32 Sup. Ct. 613, 56 L. Ed. 1066), the affidavit is not jurisdictional. See U. S. v. Leles (D. C.) 227 Fed. 190. The statute is inclusive, not exclusive, and, like statutes for actions on complaints by private pros-

ecutors, does not preclude public prosecutors from proceeding of their own motion to enforce the laws.

[2, 3] The complaint alleges defendant procured the certificate in this judicial district in November, 1900, went to South Africa in September, 1901, and established permanent residence there, at all times hitherto and now there maintained. No reference is made to defendant's last known residence in this country, and so it does not, as it should, affirmatively appear by direct and positive averment that this court has jurisdiction of subject-matter and person of defendant. Although section 15 does not expressly prescribe venue of a suit against a defendant resident abroad at his last known residence in this country, that is its import, when, as usual, is considered its implications, analogies, the substantial nature of the issue, the purpose of venue and notice, and the circumstances affecting both. Obviously Congress did not intend, contrary to principle and precedent, suit and notice elsewhere and haphazard from Alaska to Florida.

[4] It may be the pleader counted on a presumption that defendant's residence in this judicial district, when certificate issued, continued until he went abroad, and it may be that the omission could be remedied by amendment. Upon either supposition the merits may be determined. Preliminary thereto, the query in U. S. v. Sharrock (D. C.) 276 Fed. 31, whether of a citizen abroad is jurisdiction here to litigate status, and whether is due process in service of subpoena by publication, is answered yes. The relations between state and citizen, the latter's obligations to the former, are unchanged by his absence. The state is where he left it. He is bound to hear and to respond to its call to render the service of allegiance and to account for default therein at any time in any place. It is not obliged to pursue him with personal notice, but may adopt publication or other convenient method. For the state's purposes the res and situs of the relation between it and the absent citizen remain in the territory of the state. There is analogy in marriage and divorce. Hence, jurisdiction and due process.

Adverting to the merits, the charge, on information and belief, is that defendant fraudulently procured the certificate, in that he then "did not intend to become a permanent resident of the United States." The statute is "permanent citizen," perhaps equivalent terms. See Luria v. U. S., 231 U. S. 9, 34 Sup. Ct. 10, 58 L. Ed. 101. The only evidence is a copy of the certificate of citizenship, and a narrative by plaintiff's consul at Cape Town, certified by its Department of State, and presented by the district attorney, as follows:

"I, Charles J. Pisar, vice consul of the United States of America, at Cape Town, Union of South Africa, hereby certify that I am personally acquainted with Sidney Ernest Knight, who resides at Cape Town; that he stated under oath on May 26, 1917, when he registered as an American citizen at the American consulate general at Cape Town; that he was born in London on September 24, 1875; that he came to the United States in May, 1890; that he was a naturalized American citizen, submitting his naturalization certificate, issued by the First judicial court at Helena, Montana, on November 5, 1900, in proof thereof; that he came to Cape Town on September 13, 1901, for the purpose of representing the Mercantile Agency, R. G. Dun & Company, of 290 Broadway, New York City, which firm he has constantly represented in South Africa since, and that he intended to return to the United States for permanent residence whenever his employers so desired.

"I further certify that on October 25, 1920, Mr. Knight appeared at the American consulate general at Cape Town, bearing passport No. 32218/11 issued to him by the government of the Union of South Africa on October 19, 1920, with a request for a visa thereto to enable him to proceed to the United States in connection with the business of the firm he represents, and that such a visa was granted him by Vice Consul Charles W. Allen, to whom Mr. Knight was not personally known to be a citizen of the United States.

"I further certify that, answering an invitation to call at the American consulate general, Mr. Knight appeared on October 26, 1921, and upon being questioned concerning his citizenship, stated to me that he applied for a British passport in October, 1920, for specific reasons which he declined to divulge, that when he applied for said passport he was not required to take an oath of allegiance to the British crown, or to swear to the declaration made in applying for the passport; that he admitted that he has now lived for 20 years in South Africa, returning to the United States but once during this period, and that he did not know when he would return for permanent residence; that he had voted on several occasions at elections in South Africa, and that he has acquired interest in local community affairs, and intended to take an active part therein during his residence here.

"I further certify that Mr. Knight left the United States within less than one year after completing his naturalization as a citizen of the United States of America, and while he has been representing American interests in South Africa, he has failed to adhere to his oath of allegiance as an American citizen, and that his naturalization as an American citizen was fraudulently obtained, and should be revoked.

"I further certify that Mr. Knight refused to surrender his certificate of naturalization.

"Given under my hand and official seal at city of Cape Town, Union of South Africa, this 29th day of October, A. D. 1921."

Section 15 provides that if any naturalized citizen, within 5 years after issuance of certificate, takes "permanent residence" abroad, "it shall be considered prima facie evidence of a lack of intention on the part of such alien to become a permanent citizen of the United States at the time of filing his application for citizenship, and, in the absence of countervailing evidence, it shall be sufficient in the proper proceeding to authorize the cancellation of his certificate of citizenship as fraudulent"; that consuls "shall from time to time, through the Department of State, furnish the Department of Justice with the names of those within their respective jurisdictions who have such certificates of citizenship and who have taken permanent residence" therein, "and such statements, duly certified, shall be admissible in evidence in all courts in proceedings to cancel certificates of citizenship."

[5] The statute (1) creates a rebuttable presumption (perhaps) of past intent by proof of subsequent acts; and (2) imposes a duty on consuls and gives evidentiary competency to some of their ex parte and extrajudicial statements. It invades the law against hearsay evidence, always a dangerous innovation, and is not to be extended by implication.

[6-9] At the same time, to serve its purpose of information and to facilitate proof, the statute must be reasonably construed. The competency it creates can extend no farther than the duty, viz. to furnish names of naturalized citizens of permanent residence, in consuls' respective jurisdictions. Not everything the consul incorporates in his narrative will be competent and admissible, but only that which is relevant, material, and competent, were the consul testifying on oath to the facts it is his statutory duty to report, and none other. Accord-

ingly the narrative aforesaid is evidence only as follows: That May 26, 1917, at the consulate in Cape Town, defendant registered as an American citizen and on oath declared as follows: His name and time and place of naturalization; that he arrived in Cape Town on September 13, 1901, in business representation of a noted New York concern, had since continuously represented it in South Africa, and intended to return to the United States for permanent residence whenever his employer so desired; that October 26, 1922, defendant, at said consulate, admitted that in October, 1920, he had applied for a British passport, had lived 20 years in South Africa, in that time had reurned to the United States but once, did not know when he would return for permanent residence, had voted in South Africa, and was interested in community affairs and intended to be active therein; and that defendant refused to surrender his certificate of citizenship.

Other of the consul's narrative, hearsay, conclusions, advice, etc., is without evidentiary competency and value, save to the extent it discloses the overzeal, if not irritation and prejudice, of an affronted man, and inspires more than usual caution in appraising trustworthiness in reporting more or less remote conversations with an accused and admissions imputed to him. If, however, the consul's report of defendant's declarations and admissions be taken at face value, it fails to prove the vital fact that alone may invoke the presumption of defendant's fraud in procuring the certificate. Even if the declarations and admissions of past acts, but of only present intent, suffice to prove that then presently defendant was a permanent resident in South Africa, they fall short of proving that such permanent residence began 12 to 17 years theretofore and within 5 years after certificate issued—the vital fact as aforesaid. The mere facts that, 11 months after certificate issued, the citizen in his employer's business goes abroad, in it is detained 12 years, then avows his intent to return to the United States for permanent residence when his employer desired, and refuses to surrender his certificate of citizenship to one who officiously demands it, are not proof that the citizen by act and intent abandoned his domicile in the United States and acquired a domicile abroad, all within 5 years after certificate issued. They are reasonably consistent with domicile in the United States until the time of the declarations, if not always, and by reason of them is no backward presumption otherwise.

A change of abode with present intent to return to the former abode upon the contemplated happening of an event in the indefinite future, as business dispatched, health recovered, employment ended, employer's recall, is not a change of residence or domicile. If, however, a person removes to another place with present intent to abide there indefinitely, and not merely until the contemplated happening of a contingency as aforesaid, he abandons his old residence or domicile in the place from which he removed, and acquires new residence or domicile in the place to which he removed, notwithstanding he may entertain a vague, floating intent or hope to some time return to the former place. The distinction and difference are that in legal contemplation the first case is a present intent to return and independent of future determination; whereas the second case is a mere present expectation or hope to return, and wholly dependent upon future state of mind. The latter,

unlike the former, does not rise to the dignity of that "present intent" which is a vital element of residence or domicile. See Williamson v. Osenton, 232 U. S. 619, 34 Sup. Ct. 442, 58 L. Ed. 758; Gilbert v. David, 235 U. S. 561, 35 Sup. Ct. 164, 59 L. Ed. 360.

[10] It must be borne in mind these proceedings are to annul a solemn judicial grant of and by the United States to defendant, and "nothing will warrant cancellation of his grant of citizenship but clear, unequivocal, and convincing evidence, that in quantity and quality inspires confidence and produces conviction of the truth of the charge, virtually beyond reasonable doubt." U. S. v. Sharrock (D. C.) 276 Fed. 32. The evidence in this case is short of that high character. Like comment applies to the admissions of voting and community interest. All may have been presently.

Taken as a whole, the evidence fails to persuade the conscience of the chancellor that justice would be done by a decree against defendant, and so the decree is for him.

---

&#x25C9;&#x21E8;For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes