[S. F. No. 15286. In Bank.—November 2, 1934.]

CHARLES PIERCE et al., Petitioners, v. THE SUPE-
RIOR COURT OF LOS ANGELES COUNTY et al.,
Respondents.

John C. Packard, Irl D. Brett and S. E. Grainer for Petitioners.

U. S. Webb, Attorney-General, and L. G. Campbell and James S. Howie, Deputies Attorney-General, for Respondents.

W. H. Anderson, Jefferson P. Chandler, Isadore Dockweiler, J. Ray Files, Byron C. Hanna and Walter K. Tuller as *Amici Curiae* on Behalf of Respondents.

THE COURT.—This is a proceeding in prohibition to restrain the respondent superior court from making any further order or orders in an action pending before it.

The action referred to is numbered 379410 in said court and is entitled: *"The People of the State of California, on the relation of U. S. Webb, Attorney-General, v. Paul O. Pate et al."* The complaint was filed on October 18, 1934, and the action was brought for the purpose of canceling

alleged fraudulent registrations of voters in Los Angeles
County. Upon the filing of the complaint the respondent
court issued an order requiring the defendants, some 24,000
in number, to show cause before a special master why their
registrations should not be canceled. The court found that
it was impracticable to serve the order to show cause per-
sonally upon the defendants and directed that, in lieu of
such personal service, the order be published once in the
''Los Angeles Daily Journal'', and a news item be inserted
in the daily papers of the city that the defendants could
ascertain whether they were sued by an inspection of the
order to show cause on file at certain designated places.
The present proceeding was commenced on October 22d by
some of the defendants on behalf of all of them.

The return of the respondents is by way of demurrer
for want of sufficient facts, and by answer which shows that
on October 24th the court issued a supplemental and
amended order to show cause requiring postal cards to be
mailed to said defendants. Personal service of summons or
other notice was not provided for and was specifically dis-
pensed with. Certain of the defendants voluntarily ap-
peared in said action and the court has announced its inten-
tion to proceed as to the defendants not personally served
and who have not appeared, and adjudicate their right to
vote at the general election to be held on November 6, 1934.

The petitioners herein attack the power of the respondent
court to proceed in the pending action on the ground that
the court has no jurisdiction of the subject-matter of the
action and, if it has such jurisdiction, that it has no juris-
diction of the persons of the defendants who have not
appeared and have not been personally served.

 The right of the state to proceed by an action in
equity in the superior court to purge the great register
of fraudulent registrations may not seriously be questioned.
It is one of the high prerogatives of the state to provide
for and insure honest elections. Without this safeguard the
liberties of the people and the stability of the government
would be at an end. If, as we hold, the state may main-
tain such an action the right of the attorney-general to
institute it may not be attacked. The attorney-gen-
eral, as the chief law officer of the state, has broad powers
derived from the common law, and in the absence of any

legislative restriction, has the power to file any civil action or proceeding directly involving the rights and interests of the state, or which he deems necessary for the enforcement of the laws of the state, the preservation of order, and the protection of public rights and interests. (*People* v. *Stratton*, 25 Cal. 242; *People* v. *Gold Run Ditch & Min. Co.*, 66 Cal. 138 [4 Pac. 1152, 56 Am. Rep. 80]; *People* v. *Beaudry*, 91 Cal. 213 [27 Pac. 610]; *People* v. *Oakland Water Front Co.*, 118 Cal. 234 [50 Pac. 305]; 3 Cal. Jur., p. 561; 2 R. C. L., p. 918; 6 Cor. Jur., p. 812.)

◼ The petitioners claim that the jurisdiction of the subject-matter is lacking because an identical remedy is afforded by section 1109 of the Political Code. That section provides that "any person" may bring an action in the superior court to cancel fraudulent registrations. The attorney-general asserts that the state is not "any person" as provided by that section. We have not been referred to any authority, and we have discovered none, that the state is so included, although the purpose of an action under section 1109 is the same as the pending action. But neither is the section to be construed as a restriction upon the broad powers of the attorney-general. The fact that a remedy is given to a private individual to institute such an action could not operate to deny the power of the attorney-general to bring a similar action on behalf of the state, which power exists independent of said section. We conclude that the respondent court has jurisdiction of the subject-matter of the action.

◼ But jurisdiction of the persons of the defendants who have not appeared and who have not been served with summons or who have not been served personally with the order to show cause, does not appear. The legislature might provide for constructive or substituted service in such cases, as has been done in other states, but it has not done so. We must then look to the law of the state as to what service is necessary.

Before the right of suffrage may be denied to an individual he must have notice and an opportunity to be heard in the manner provided by law. Here the substituted service sought to be applied is not available, and jurisdiction of the person must be obtained in the usual manner by personal service, or by substituted service of summons as pro-

vided in section 412 of the Code of Civil Procedure, before the rights of the litigant may be finally adjudicated. This is true under the law whether the action be *in rem* or *in personam* where, as here, no service is provided by the law of the state except by summons or by other personal service. Any order made in the pending action, though provisional, which would deny to any defendant the right to vote at the election on November 6, 1934, would be in effect a final adjudication of the right to exercise the elective franchise as to that election.

The holding of the District Court of Appeal in *Ash* v. *Superior Court,* 33 Cal. App. 800 [166 Pac. 841], is directly applicable to this proceeding. There an elector sued under section 1109 of the Political Code to cancel alleged fraudulent registrations. The voters whose registrations were claimed to be fraudulent were not made defendants in the action. It was properly held that the registrants were necessary parties to said action, and that before they could be deprived of the valuable right to vote they must be regularly served with process. This is particularly true when the legislature has not provided for some lawful method for substituted service. The peremptory writ of prohibition and order, heretofore issued, limited as follows, was therefore appropriate:

"It is ordered, that the respondent superior court herein be and it is hereby prohibited from making or entering any judgment, order or decree in the action pending in said court entitled: '*The People of the State of California on the relation of U. S. Webb, Attorney-General, Plaintiff,* v. *Paul O. Pate et al., Defendants*', numbered 379410 in said court, adjudicating the status, or affecting the rights of any defendant in said action who has not been regularly served with summons or who has not been otherwise personally served with notice to appear or who has not appeared in said action.

"Let a peremptory writ of prohibition issue accordingly."

THOMPSON, J., Dissenting.—I dissent. It is a fundamental prerequisite to the issuance of the high prerogative writ of prohibition that it be made to appear that the inferior tribunal is acting or is threatening to act in excess of its jurisdiction. This rule is so well understood that it

does not require the citation of authority. However, reference may be had to *Traffic Truck Sales Co.* v. *Justice's Court*, 192 Cal. 377 [220 Pac. 306], and cases there cited. It is manifest that the rule is not met by petitioner in this case. It was not seriously contended that the respondent court had no jurisdiction of the subject-matter of the action and, indeed, I do not believe such argument cauld be logically advanced. It must be conceded that one of the paramount duties of a republican form of government is to assure its citizens that the channels through which the power of the people is exercised and their will made known shall be preserved pure and unimpaired by fraud or illegality. To deny the state the power to perform its duty in this regard is to confess its impotency to maintain its existence. According to the complaint filed in the court below the great register contains the names of many thousand persons who are falsely and fraudulently registered; and that ''thousands of fictitious names have been placed on the registration list by persons not lawfully entitled to vote, for the manifest purpose of unlawfully voting and unlawfully influencing the result of the said general election''. It is further alleged that because of the ''fraudulent and fictitious registration, the will of the majority of the lawfully registered and qualified electors, in their choice of candidates, will be defeated at the said general election'' unless those falsely registered are prevented and restrained from voting thereat. In addition, it is alleged, among other things, that these people, claimed to be fraudulently registered, have given as their address one ''which is a vacant and uninhabited lot'' and have signed false and fictitious names as .well as given ''a false and fictitious address'' and registered ''at different times and places in numerous precincts under the same, or a fictitious name or names and given a fictitious place or places of residence within each precinct''. The complaint sets forth that the state is without an adequate and practical remedy unless the court ''enters its orders and decrees, enjoining the registrar of voters [who is made a defendant] from certifying the names of each and all of the other defendants named in the caption . . . to the election officers in their respective precincts''. The prayer asks, in addition to other relief, that the registrar of voters ''be directed to show cause why he should certify the names of

each and all of said other defendants to the election officers of their respective precincts at the general election on November 6, 1934". In the return to the order to show cause it appears that the defendant Kerr, as registrar of voters, has made a formal appearance and "has submitted to the jurisdiction of the court".

In the case of *People* v. *Tool*, 35 Colo. 225 [86 Pac. 224, 177 Am. St. Rep. 198, 6 L. R. A. (N. S.) 822], which it is true involved not only the registration of "many thousands of false, fraudulent, and fictitious names" but also a conspiracy among a majority of the election commission and election judges in each precinct to prevent a fair election, we find the enunciation of certain principles which, to my mind, are irrefutable. We there read: "The state, in its sovereign capacity, by the very terms of its being, is intrusted with powers and duties to be exercised and discharged for the general welfare, and for the protection of rights and liberties of its citizens. In the exercise of these powers and the discharge of these duties, it is not restricted in the remedies which it may employ. The interest of the state in a pure election is not limited to the protection which may be afforded by the punishment of those, through criminal prosecutions, who violate the laws relating to elections by padding registration lists, permitting repeating, and falsifying elections returns. If a conspiracy of the magnitude charged, exists to commit frauds violative of the most sacred rights of the citizens of the state, then any attempt to prosecute and convict the wrongdoers would be futile. If, then, the state in order to secure an honest election, should be limited to the prosecution and punishment of those who might be guilty of the frauds charged, the people of this commonwealth are at the mercy of those who have combined to commit these frauds; the state is not so impotent. The result to be accomplished by a proceeding which the state may institute, rather than its character, constitutes the test of its power. It has the right to appeal to this court for a determination and exercise of its powers by an appropriate process, to prevent wrongs which, in its sovereign capacity, it is its duty to prevent. Certainly no good reason can be advanced why it is not as wise for the state, by means of a civil action, to prevent an offense, injuriously affecting its rights or the liberties of its citizens,

as it would be to wait and punish, or attempt to punish, the offender for a crime after it has been committed.

"It is the undoubted duty of the state to preserve, pure and unimpaired, every channel through which powers are exercised necessary for the protection of the rights and liberties of its citizens. Deny this power and the supremacy of the state government is denied. The rights of citizens which will be impaired if the frauds threatened are committed, are of the most vital importance. If not prevented, then the interest of the state, as well as the interests of those whom it is bound to protect, will be injuriously affected. The power which the state may exercise in such circumstances is wholly independent of other remedies at law. It is the function of the attorney-general, by information, to protect the rights of the public, and in so doing he has the right to resort to the more lenient remedy of injunction to prevent wrongs against the public rather than wait until after their commission, and then seek to punish the wrongdoers. The bill discloses that certain of the respondents have entered into a conspiracy to commit the illegal acts charged. These acts will affect the entire state. Individuals cannot invoke the power of a court of equity to enjoin these acts, but the state, in its sovereign capacity as *parens patriae*, has the right to invoke the power of a court of equity to protect its citizens when they are incompetent to act for themselves. The state is not bound to wait until the object of the illegal combination is effected which will deprive the people of their liberties, and constitutional rights, but may bring an action at once to prevent its consummation; and while the writ of injunction may not be employed to suppress a crime as such, yet when acts, though constituting a crime, will interfere with the liberties, rights and privileges of citizens, the state has not only the right to enjoin the commission of such acts but it is its duty to do so. (*In re Debs,* 158 U. S. 564 [15 Sup. Ct. 900, 39 L. Ed. 1092] ; *Attorney-General* v. *Chicago M. & St. P. R. R. Co.* (35 Wis. 425), *supra; State* v. *Houser,* 122 Wis. 534 [100 N. W. 964] ; *Attorney-General* v. *Blossom,* 1 Wis. 317; *Columbian Athletic Co.* v. *State,* 143 Ind. 98 [40 N. E. 914, 28 L. R. A. 727, 52 Am. St. Rep. 407] ; *Louisville N. R. Co.* v. *Commonwealth,* 97 Ky. 675 [31 S. W. 476] ; *Commonwealth* v. *McGovern,* 116 Ky. 212 [75 S. W. 261, 66 L. R. A. 280] ; *People* v. *Truckee Lumber Co.,* 116 Cal: 397

[48 Pac. 374, 39 L. R. A. 581, 58 Am. St. Rep. 183]; *In re Court of Honor,* 109 Wis. 625 [85 N. W. 497].) In the celebrated Debs case, *supra,* Mr. Justice Brewer, after discussing the interest which the government had in the action out of which the proceedings for contempt against Debs arose, and having reached the conclusion that the government had a property right to protect, said 'We do not care to place our decision upon this ground alone. Every government, intrusted by the very terms of its being with powers and duties to be exercised and discharged for the general welfare, has a right to apply to its own courts for any proper assistance in the exercise of the one and the discharge of the other; and it is no sufficient answer to its appeal to one of those courts that it has no pecuniary interest in the matter. The obligations which it is under to promote the interest of all, and to prevent the wrongdoing of one resulting in injury to the general welfare, is often of itself sufficient to give it a standing in court.' ''

In the case of *Aichele* v. *People,* 40 Colo. 482 [90 Pac. 1122], it was alleged that the county clerk and his deputies had unlawfully conspired to corrupt an election and that in pursuance thereof ''defendant and his deputies have permitted and allowed and made and caused to be entered upon the registration sheet and books in his office at divers times many thousand false and fraudulent registrations of persons not qualified to be registered in the several precincts of the county and also of many fictitious names as persons entitled to be registered''. The prayer was that the county clerk be enjoined from certifying the fraudulent and fictitious names to the election officials. The court said: ''We do not see why a court of equity, in the exercise of its ordinary equitable jurisdiction, has not the same power to restrain a public officer from registering or certifying fictitious persons, or making or changing original registration after the time fixed by the statute, as it would have to prevent a public officer from entering upon public records false or forged instruments, or those which are not entitled to be placed upon record. At least with respect to the allegation in the complaint that the defendant has knowingly and wilfully made and entered upon the registration books the names of fictitious persons, and has made and is making original registrations and changing the same after the time

fixed by law, there can be no question that it is within the power of a court of equity to prevent or render harmless such illegal acts, and, in doing so, it is in no sense supervising or controlling the conduct of an election.''

It must follow from these declarations of the equitable principles as well as from the natural sequence of reason that the state has the undoubted power through the courts to purge its records of false and fraudulent registrations in order to prevent the consummation of an election fraud. We may admit for the purpose of argument that the court below has not acquired jurisdiction of the persons of those who have not appeared in answer to the order to show cause, but it has jurisdiction of those who have submitted to its jurisdiction by appearance, including the registrar of voters. That it does not necessarily follow, however, that in every case the court is without jurisdiction to make an order affecting the status or even the property of a person over whom the court has not acquired jurisdiction by the service of process, I desire in passing to call attention to the recent case of *Nichols* v. *Superior Court, ante,* p. 589 [36 Pac. (2d) 380], wherein to prevent fraud we upheld the appointment of a receiver and an order for the payment of alimony *pendente lite* out of the property without the service of an order to show cause or summons on the defendant. However, it is not essential here that we go to that length in this case to establish jurisdiction.

Now let us assume, as we must in accordance with the allegations of the complaint that many persons have registered from vacant and uninhabited lots and from fictitious addresses, and that such facts are made irrefutably to appear to the court. Can it be successfully asserted that the court has not the authority to order the defendant registrar of voters not to certify such names to the election officials? It is a plain absurdity to argue that one registered from a ''vacant and uninhabited lot'' is a duly registered elector. It is equally obvious that he has no right to protect. I am supposing cases where it is palpable and unescapable that the registration is fraudulent and fictitious only, for the purpose of illustrating the fact that the court is not without jurisdiction to take some action. In the supplemental and amended order to show cause the respondent court has said that the names may be stricken from the great register.

We cannot indulge the supposition that names will be stricken improperly, but must confine our thoughts to those whom it has the right to order the registrar of voters to drop. The case of *Ash* v. *Superior Court*, 33 Cal. App. 800 [166 Pac. 841], although it is not the measure of the case here, because it is one brought by an individual under the express authority of section 1109 of the Political Code, recognizes the rule which I think is entitled to weight in this case. The District Court of Appeal, speaking through Mr. Presiding Justice Conrey, said: ''There may be instances in which the action authorized by section 1109 of the Political Code may be prosecuted and a valid judgment rendered compelling the clerk to cancel registrations without bringing in as party defendant any person other than the clerk. This would seem necessarily to be so in case of the death of the person registered. But whatever may be said of other instances of cancellation of registrations as provided by section 1106 of the Political Code, we think that the power of cancellation of a completed registration without notice to the person whose registration is sought to be cancelled cannot be exercised arbitrarily and without notice under any of the circumstances included within the action now pending in the superior court.''

Even as in the case of the death of the one registered, so must it be in the case of those who are registered from a residence which does not in fact exist.

In the case of *Aichele* v. *People, supra,* the action was against the clerk only.

Section 1109 cannot be used from which to argue that in a case brought by the state to purge its records, the name of the person sought to be removed must be made a party for several reasons. First, there is no such requirement in section 1109, although the court may in a proper case, such as the Ash case, require it. Second, the section gives to an individual a right which, according to *People* v. *Tool, supra,* he would not have without the section, but which right, in the absence of statute, is lodged exclusively in the state.

Third, and lastly, if it were to be so construed equity is not confined to a procedure of law which is inadequate.

Furthermore, under the prayer for general relief, the court has the jurisdiction, without interfering with the right

of any duly registered elector, and in order to protect the state from fraud and to prevent its wholesale consummation, to take effective measures to prevent and to assure the citizens that illegal and fraudulent votes will not be cast. In *People* v. *Tool, supra,* in the exercise of its equitable jurisdiction the court went to the length of appointing two watchers in each of the precincts for the purpose of observing how the election was conducted. I know of no reason why the arm of equity may not reach to every precinct wherein it is claimed there are fictitious registrants for the purpose of securing an honest election. So do I read the Tool case and so I think does conscience dictate.

It is evident, therefore, that the respondent court is vested with jurisdiction, and I cannot but feel it should be left free to exercise that jurisdiction. The peremptory writ should be denied.

LANGDON, J., Concurring and Dissenting.—I concur in the above order in so far as it prohibits the lower court from striking from the great register the names of electors who were not served and did not appear in the superior court proceeding. I dissent from the order because of its manifest failure to grant the full appropriate relief to which petitioners are entitled, namely, the prohibition of all further proceedings in the court below.

This is an application for an alternative writ of prohibition, to restrain the respondent superior court from making contemplated orders, the effect of which would be to deprive defendants and petitioners in an action pending therein of the right to vote at the general election on November 6, 1934.

However pure and patriotic the motives behind it, this proceeding should never have been commenced. It should have been stayed immediately by this court on application for the alternative writ of prohibition, in accordance with the uniform practice of this court. A peremptory writ of prohibition should now issue, restraining all further activities in the respondent court in this matter; and all orders heretofore made should be annulled. It is perfectly clear now that the action below is a sham proceeding and a perversion of court process, absolutely void, and it can have no effect other than to intimidate and prevent eligible voters from

going to the polls. It outrages every principle of justice and fair play. In brief, it attempts, in a personal action in the superior court, to adjudicate and cut off the constitutional right to vote of over 24,000 defendants, without personal service of any kind upon said defendants and upon a purported service by publication of this mass of names, without addresses, and not even in alphabetical order, on a single occasion, in a newspaper of some 1500 circulation.

It was admitted in open court by counsel for respondent that its order does not mean what it says. The respondent court now declares that, notwithstanding its threat to cancel all registration of defendants who failed to appear and answer before a date fixed, it will not prevent any of them who do not appear before it from voting at the November election. Counsel state that the effect of this order is merely a "challenge in gross" of the right of petitioners to vote. The proceeding, either as originally instituted by the attorney-general or as now interpreted by the respondent court, is admitted by the respondent to be and, in so far as the reported decisions show, is without precedent or parallel in this or any other state of the Union.

The proceeding is contrary to law, to good morals, and to sound statesmanship. It is contrary to law because the court has no jurisdiction over the subject matter or the persons of the defendants. It is contrary to good morals because it will unjustly deprive citizens of the right to vote, many of whom have no actual notice that their rights are in any way questioned. It is contrary to sound statesmanship because it seeks to prevent large numbers of citizens of this state from freely expressing their will at the polls, without a proper or legal determination of their rights, thereby striking at the very heart of free government. It is, moreover, unnecessary, because the law as it now stands contains ample safeguards against fraudulent voting. There will not be one fraudulent vote cast in the state of California, if the facts concerning fraudulent registration are presented to the election officers, and they perform their duties as prescribed by law. The legal presumption is that these officers will do their duty.

I make no criticism of the activities of any citizen or group of citizens, in conducting investigations to discover false registrations. Whether official or otherwise in origin,

such investigations are in the public interest. If the results of these efforts are made the basis of a challenge at the polls, they will fully accomplish their legitimate purpose. It is within the power of the election officers, and it is a duty inherent in their offices, to report to the district attorney cases of false swearing. It is safe to say that the challenged voter, with knowledge of these investigations, will not take the oath required of him and place himself in peril of criminal prosecution for perjury, unless he is able to justify his claim of right to vote. The election rolls should of course be purged of false registrations. The opportunity to do this has always been present and is still present. But the method prescribed by law should be followed, and the method of challenge set forth in the Political Code bears not the remotest similarity to the action taken by the court below.

There was no ground whatever to justify the invention of this unique and drastic equity proceeding. While I do not question the good faith of respondent court and counsel, it is clear that they have mistaken their remedy.

In times of stress, public excitement and hysteria, this court, the highest tribunal in the state, must stand as a bulwark in protecting the rights of every citizen within its borders. Its duty is clear and it must not falter. If today, without due process of law, the vested right of the qualified citizen to exercise his franchise at the polls is taken from him, tomorrow, without due process of law, the vested right of ownership of property may be taken away. While the Constitutions of this state and of the United States stand, this court cannot permit such action.

On October 18, 1934, the action which is under review here was filed in the Superior Court of Los Angeles County, entitled "People of the State of California on relation of U. S. Webb, Attorney-General, vs. Paul O. Pate" and others. Approximately 24,130 persons were named as defendants. The registrar of voters was also joined as a defendant. The plaintiffs alleged that defendants were guilty of fraudulent practices in obtaining registration and that the public interest required that their names be stricken from the election rolls. The prayer was that the court appoint a master with power to recommend deputies, to hear and determine the right of the various defendants to vote at the next

general election; and that the court issue an order to show cause, directing each and every defendant to appear before these officers, and providing that the name of any defendant not appearing shall be stricken from the great register. No attempt was made to serve any of said parties, but the court, over the objection of counsel appearing as *amici curiae,* issued the order to show cause as prayed, directing defendants to appear on or before October 25, 1934, and ordering that all failing to appear should have their names stricken from the register and be restrained from voting. The court also directed that its order to show cause be published *once* in the "Los Angeles Daily Journal", and that copies be posted in three public places.

Shortly after the rendition of the order to show cause, five of the said defendants, acting on behalf of themselves and the others in a representative character, filed this application for a writ of prohibition, charging that the contemplated action of the lower court will be in excess of its jurisdiction. The position of petitioners is sound: The court lacks jurisdiction, both of the subject matter and the parties.

Jurisdiction of the subject matter, the power of the court to consider the class of cases to which the particular cause belongs, is of course essential to the validity of any proceeding. Without it, the court's judgment is wholly void; and, unlike jurisdiction over the person, it cannot be conferred by any form of voluntary appearance or consent. (*Harrington* v. *Superior Court,* 194 Cal. 185 [228 Pac. 15]; 1 Freeman on Judgments, 5th ed., 674, sec. 337.)

The proceeding by the attorney-general purports to be brought under the general equity powers of the superior court. No provision for it is found in the statutes of this state, which of course govern our whole procedure, regardless of whether the form of the action was originally "equitable" or "legal". Hence the court is without jurisdiction unless it can be established that there is first, a serious wrong or evil which calls for judicial action; and second, that existing statutes provide no procedure to remedy it, or, as commonly stated, that there is no adequate remedy at law. But the unverified document filed by the attorney-general, and labeled "Complaint for Injunction" makes no pretense of meeting this basic test. It alleges "that there is no plain,

speedy, or any adequate remedy at law for the correction of said false and fraudulent registrations; that there is no practical remedy except through the interposition of a court of equity''. Apart from the bald assertion of the pleader, repeatedly held insufficient (*Streator* v. *Linscott*, 153 Cal. 285 [95 Pac. 42]), there is no showing whatever of absence or inadequacy of legal remedy, and, indeed, the complaint would convey the impression that no appropriate legal remedy for the alleged fraudulent acts exists at all. This is, of course, untrue; there are two legal remedies quite appropriate to the circumstances, and their adequacy is attested by the fact that the legislature has written them into the statutory law of this state, to apply in precisely the situation presented in the complaint. One remedy is the action provided by section 1109 of the Political Code; an action by any person to compel the county clerk to cancel illegal or improper registrations. The other remedy is the challenge of the voter at the polls, by any elector of the county, followed by a summary determination by the election board of the legality of his registration and right to vote, as provided in sections 1230 to 1243 of the Political Code. In the case of each of these remedies, the legislature has established a procedure adequate in all respects to provide a speedy determination of the issue. The sufficiency and appropriateness of these proceedings have never been questioned, and their practicability has been demonstrated by time and experience. A statutory grant of jurisdiction of this character should be exercised within the limits prescribed by the statute, and strictly in conformity therewith. (*Collier* v. *Carter*, 100 Md. 381 [60 Atl. 104].) It has been held in California that the county clerk has no power to cancel certificates of registration, or withhold them from use in an election, except as authorized by the appropriate sections of the Political Code. (*Pohlmann* v. *Patty*, 33 Cal. App. 390 [165 Pac. 447].)

This would seem to dispose of the suggestion made by members of this court that the proceeding below was, in fact, an action under Political Code section 1109, and therefore within the court's jurisdiction. The proceeding, in the first place, does not purport to be brought under said section; secondly, it seeks an injunction and section 1109 authorizes no such relief; thirdly, section 1109 requires per-

sonal service on each defendant, whereas none was intended or attempted here. Counsel for respondents, fully aware of their failure to meet the requirements of said section, have strenuously insisted in briefs and oral argument that this is an entirely different proceeding, brought by the people of the state in their sovereign capacity. Accepting, as we must, their characterization of the action, let us examine the cases submitted to establish jurisdiction over it.

These are, without exception, inapplicable. Thus, in *Gibson* v. *Board of Supervisors*, 80 Cal. 359 [22 Pac. 225], a bond election was contested on grounds of fraud. The opinion expressly states that there was *no statutory procedure* applicable, and that for this reason the court could inquire into it. In *Pagosa Springs* v. *People* (*Patterson* v. *People*), 23 Colo. App. 479 [130 Pac. 618], a certain special election had been held and the result declared. The complaint alleged *conspiracy by the judges of election* to prevent qualified electors from voting, and other illegal acts. The court said that it could grant relief under its general equity powers, *"there being no statutory provision* for contesting the validity of an election under the local option statute"*. *Wright* v. *McKinney*, 287 Ill. 529 [122 N. E. 813], is a similar case. In *Elkins* v. *Milliken*, 80 Colo. 135 [249 Pac. 655], initiative petitions were fraudulently altered by the sponsors after signatures had been obtained, and it was held that the court had power to order the Secretary of State not to place the measure on the ballot. The basis for equity jurisdiction was found where it appeared that the only other proceeding which the law provided was a protest before the Secretary of State, who had no power to summon witnesses and hence could not establish the fraudulent character of the petitions. Thus it was a case of an absolute lack of adequate remedy at law. In *Aichele* v. *People*, 40 Colo. 482 [90 Pac. 1122], petitioner, a taxpayer, alleged that the respondent county clerk and his deputies had unlawfully conspired to make false registrations, and the only relief asked was to prevent him from certifying to the judges of election the fraudulent and fictitious registrations which he and his subordinates had unlawfully made. In *People* v. *Tool*, 35 Colo. 225 [86 Pac. 224, 117 Am. St. Rep. 198, 6 L. R. A. (N. S.) 822], the complaint charged a conspiracy of judges of election to place false names on the lists; by

threats of violence to prevent members of an opposing political party from serving as judges of election; by use of police officers and toughs to intimidate voters and prevent them from casting ballots; and with ballot stuffing and similar practices. It was held that the court could by injunction *direct that the election officials comply with the law governing elections* on pain of punishment for contempt. In *Shaw* v. *Circuit Court*, 27 S. D. 49 [129 N. W. 907], an election was held on the question of removal of a county seat, and was contested. The court held that it had jurisdiction to issue a temporary injunction to restrain removal of the county offices pending the outcome of the election contest. *Boren* v. *Smith*, 47 Ill. 482, is a similar case. *Gilmore* v. *Waples*, 108 Tex. 167 [188 S. W. 1037], dealt with the power of the executive committee of a political party to nominate a candidate for office, and the court merely construed and gave effect to a specific statute.

These are the authorities chiefly relied upon to establish the jurisdiction of the superior court over this extraordinary type of proceeding. In no case was the action brought against individual electors to cancel illegal registrations, or otherwise to determine their rights as voters; the suits were ordinarily against election officials, to make them obey the laws. In all the cases the court proceeded in accordance with statutory authority, except where there was no statutory provision at all governing the situation, and in those cases the court acted under its inherent equity power to prevent the consummation of a wrong which would otherwise go unredressed. The reasoning of this latter group of cases demonstrates their inapplicability to the situation before us, where a complete statutory procedure offering dual remedies exists. It follows that the lower court did not, by filing of the complaint, obtain jurisdiction over the cause. This being so, the orders made and contemplated are void, and are not binding or conclusive as to the rights of any defendants, regardless of whether they were served with summons or voluntarily appeared.

The second aspect of jurisdiction is that over the parties, and it is plain that the court had no personal jurisdiction over the defendants. Jurisdiction over the person is obtained by service of process in the manner prescribed by statute, or by voluntary appearance. (Cal. Code Civ. Proc.,

sec. 416; see *Chaplin* v. *Superior Court,* 81 Cal. App. 367 [253 Pac. 954].) How does the lower court justify its assumed jurisdiction in the present proceeding, in which personal service of process was not attempted? Counsel's argument is that the action was brought to determine the civil status of certain defendants and was therefore *in rem;* that in an action *in rem,* any reasonable constructive service ordered by the court is sufficient. Numerous cases are cited, and again none is in point, nor is either proposition correct.

Actions to determine personal status are in the nature of proceedings *in rem,* the status being considered a *"res"* within the territorial jurisdiction of the state of domicile. The example of divorce proceedings is most common. (See *Haddock* v. *Haddock,* 201 U. S. 562 [26 Sup. Ct. 525, 50 L. Ed. 867, 5 Ann. Cas. 1]; 17 Cal. L. Rev. 160.) But the present action has not as its object the determination of a status. The right to vote in this state is granted, and the qualifications of voters are prescribed, in our Constitution, article II, section 1. The status of the voter, if we must call it that, is established by the Constitution, and not by legislative enactment. The legislature has prescribed certain regulations by the registration laws, which must be followed before the voter having the constitutional qualifications can exercise his franchise. But registration is not an element which determines the status of a voter; he may be a qualified voter, though unable to vote in a particular election because improperly registered. (*Bergevin* v. *Curtz,* 127 Cal. 86 [59 Pac. 312]; *Minges* v. *Board of Trustees,* 27 Cal. App. 15 [148 Pac. 816].) The present action, therefore, is not to determine status, but to cut off the personal right to vote on the ground of failure to conform to the statutory regulations governing the exercise of the right. This has none of the characteristics of a proceeding *in rem,* and it falls within the accepted definition of an action *in personam,* for it seeks "to bar some individual claim". (*Tyler* v. *Judges of the Court of Registration,* 175 Mass. 71 [55 N. E. 812, 51 L. R. A. 433].)

This conclusion was the basis of the decision in *Ash* v. *Superior Court,* 33 Cal. App. 800 [166 Pac. 841], wherein it was held that the person whose registration is sought to be canceled is a necessary party defendant in any action,

and must be brought in by *personal service of summons* unless he appears voluntarily; and that even the *mailing* to him of a copy of an order to show cause why his registration should not be canceled could not confer jurisdiction over his person. The court declared (33 Cal. App. 804): "We may say here, as was said by the Supreme Court of New York in a similar case, that if the statute may be properly construed to give a judge the right to prevent any person from voting by striking his name from the register—as, under the existing law, the names of voters must be registered for a specified period of time prior to an election—without adequate procedure to bring such person before the court, 'then the provision is of a sweeping and revolutionary character and dangerous in the extreme . . . Such a power so construed would be unconstitutional as to its exercise, would deny the right of suffrage granted by the Constitution of the state, and would leave the election . . . entirely within the power of state judicial officers.' (*In re Ward*, 20 N. Y. Supp. 606.)"

But even if the action were *in rem*, the second proposition stated by counsel, that in such an action the court may determine its own reasonable method of constructive service, is entirely unsound. They refer us to article VI, section 5, of the Constitution, giving jurisdiction in equity to the superior court; and to section 187 of the Code of Civil Procedure, providing that where jurisdiction is conferred on a court by Constitution or statute, any suitable process or mode of proceeding may be adopted, *"if the course of proceeding be not specifically pointed out by this code or the statute"*. Of course, this proviso destroys the force of their contention, for section 187 is available only where existing statutes fail to provide a procedure and process. (*McKendrick v. Western Zinc Min. Co.*, 165 Cal. 24, 30 [130 Pac. 865].) It should also be borne in mind that the constitutional provision above referred to "does not confer any rights on the parties; it merely designates the courts where such rights as they may have in equity shall be enforced . . . " (*Estate of Barnett*, 97 Cal. App. 138, 141 [275 Pac. 453].)

It has long been settled in practically every state in the Union that constructive service, unknown at common law, is wholly dependent upon statute. It is permissible only in

the circumstances specified by statute, and can be valid only when in strict compliance with the express terms thereof. (*Columbia Screw Co.* v. *Warner Lock Co.*, 138 Cal. 445 [71 Pac. 498]; *Matter of Tracey*, 136 Cal. 385 [69 Pac. 20]; 50 C. J. 496, sec. 105; 50 C. J. 497, sec. 106; 50 C. J. 502, sec. 114.) In California the Code of Civil Procedure, in section 412, sets forth the grounds upon which an order for publication of summons may be had; for example, that the defendant cannot, after due diligence, be found within the state, or has concealed himself to avoid service. The section requires that such facts appear by affidavit. Not only was there no affidavit in the present proceeding, but the unverified complaint does not even attempt to allege that any of the statutory grounds exist. The order for publication of summons was consequently void. And it was void for the additional reason that it did not provide for publication in the manner and for the period prescribed in section 413.

Turning to the cases cited by respondents, *Moyer* v. *Peabody*, 212 U. S. 78, 84 [29 Sup. Ct. 235, 53 L. Ed. 410], states the familiar truism that due process of law depends on the circumstances. The case was concerned with an insurrection, and the right to vote was not involved. In *Huling* v. *Kaw Valley Railway & Imp. Co.*, 130 U. S. 559, 564 [9 Sup. Ct. 603, 32 L. Ed. 1045], there was a condemnation proceeding, and service by publication under statutory authority was held binding on the owner of the real estate. In *Title & Document Restoration Co.* v. *Kerrigan*, 150 Cal. 289 [88 Pac. 356, 119 Am. St. Rep. 199, 8 L. R. A. (N. S.) 682], the court considered the California statute providing for an action by persons in possession to establish title to real estate, where the records were destroyed by fire. *American Land Co.* v. *Zeiss*, 219 U. S. 47 [31 Sup. Ct. 200, 55 L. Ed. 82], dealt with the same statute. In *Shepherd* v. *Ware*, 46 Minn. 174 [48 N. W. 773, 24 Am. St. Rep. 212], the statute was concerned with adverse claims to property, and provided for publication of summons in cases of necessity where claimants were unknown. *State* v. *Guilbert*, 56 Ohio St. 575 [47 N. E. 551, 60 Am. St. Rep. 756, 38 L. R. A. 519], also deals with property. In *Security Sav. Bank* v. *State of California*, 263 U. S. 282 [44 Sup. Ct. 108, 68 L. Ed. 301, 31 A. L. R. 391], the proceeding was to escheat bank deposits unclaimed for over twenty years.

It was held that the statutory provision for service by publication was consistent with due process, the proceeding being *quasi in rem*. The court in *Re Craven*, 178 La. 372 [151 So. 625, 90 A. L. R. 973], held that disbarment of an attorney could be based on substituted service, where the matter was under the state Constitution governed by rules of court, and the rules provided for such service in cases where the accused concealed himself or could not be found. *In re Holland*, 96 Cal. App. 655 [274 Pac. 559], was a proceeding to revoke the license of an attorney, and it was held that jurisdiction was acquired by publication for the period specified in disbarment proceedings, where it appeared by affidavit that the attorney could not after due diligence be found within the state. *United States* v. *Knight*, 291 Fed. 129, involved a suit to cancel a certificate of citizenship for fraud or illegality. It was held that service by publication was proper in cases where the defendant lived abroad. In short, the published summons in every case was authorized by established procedure, and in no case did the court itself determine, without reference to the controlling statutes, what type of service should be made.

Mention may be made here of the fact brought to our attention at the hearing that, after the application for the alternative writ of prohibition was filed, the lower court, on its own initiative, decided that post cards should be mailed to the addresses of the various defendants, apprising them of the order, and made a supplemental order to this effect. It appears also that several newspaper advertisements and news items calling attention to the suit were published, that five copies of the order to show cause were mailed to the chairman of the county central committee of each political party, and that a copy of said order was sent to each public school building in the precincts where names were questioned, for posting. What additional validity this fantastic method of notification can give to the previous illegal and void service is beyond my comprehension. Inasmuch as none of these forms of substituted service complies with our statutes, no jurisdiction can result from them under the principles already discussed. In particular, the insufficiency of mailed notices in a proceeding to cancel registration has been determined in *Ash* v. *Superior Court*, *supra*.

The orders of the court are, therefore, void for lack of jurisdiction over the parties defendant.

From the foregoing, the right of petitioners to the remedy sought, a peremptory writ of prohibition to restrain the lower court from acting in excess of its jurisdiction in this matter, is clear. The writ lies to arrest judicial proceedings in excess of jurisdiction in all cases where there is no other plain, speedy and adequate remedy. (Cal. Code Civ. Proc., sec. 1103; *Jardine* v. *Superior Court*, 213 Cal. 301 [2 Pac. (2d) 756, 79 A. L. R. 291]; *Havemeyer* v. *Superior Court*, 84 Cal. 327, 401 [24 Pac. 121, 18 Am. St. Rep. 192, 10 L. R. A. 627]; see 22 Cal. L. Rev. 537.) There are, however, objections raised by counsel which may be briefly examined.

It was suggested at the hearing that even though it be conceded that the publication of summons did not confer jurisdiction over the persons of the defendants, nevertheless a writ of prohibition should not be granted for the reason that some defendants may appear (and some have appeared) before the court to submit to its jurisdiction. This assumes, of course, that there is at least jurisdiction over the subject matter; but even making this assumption, the suggestion is untenable. In the leading case of *Havemeyer* v. *Superior Court, supra,* wherein the right to the writ of prohibition was exhaustively discussed, the opinion states that "it never was the law that a court having jurisdiction to issue the writ had any discretion to refuse it when demanded by the real party in interest bringing himself clearly within the law". (84 Cal. 327, 401.) Petitioners filed their application in a representative character, on behalf of themselves and other defendants; the petition makes the necessary allegations to justify a representative suit under section 382 of the Code of Civil Procedure. (See *Jellen* v. *O'Brien*, 89 Cal. App. 505 [264 Pac. 1115].) All of the defendants who have not appeared in the court below are, through the representation of these petitioners, seeking to restrain the lower court from acting in a case where it has no jurisdiction over them. It is elementary that waiver of the objection of lack of jurisdiction by one defendant does not operate as a waiver of the objection by other defendants. (*Vian* v. *Hillberg*, 111 Neb. 232 [196 N. W. 153].) Hence petitioners and the other nonappearing defendants whom they

represent are entitled to the issuance of the writ, and under the rule laid down in *Havemeyer* v. *Superior Court, supra,* this court has no discretion to refuse their demand. The contrary view would mean that every defendant asserting lack of jurisdiction over his person would be compelled either to *waive the jurisdictional objection* by making an appearance and submitting to a trial on the merits, or to *waive his right to a trial on the merits* by ignoring the court's order, and taking a chance that ultimately in some subsequent proceeding the order would be declared void. If the order were ultimately held valid, it would then be too late to secure a hearing on the merits. Must petitioners and the other defendants take this chance? We expressly held in *Jardine* v. *Superior Court, supra,* upon a full review of the authorities, that they do not have to do so.

The contrary view would, indeed, eliminate the writ of prohibition entirely as a remedy to *prevent* unlawful exercise of jurisdiction over the person, since it is possible in any case to say that the writ should not issue because the defendant *may* appear and waive his objection. Is it conceivable that the lower court, by its order to show cause, which gave less than ten days to appear, can hasten the illegal proceeding and by taking action with respect to some of the defendants preclude the others from securing protection of their constitutional rights by the only remedy available? The answer can be found in *Havemeyer* v. *Superior Court, supra,* page 390: " . . . the operation of the writ of prohibition is *excluded only in cases where the action of the inferior tribunal is completed, and nothing remains to be done in pursuance of its void order.* If its action is not completed and ended, its further proceedings may be stayed, and *if it is necessary,* for the purpose of affording complete and adequate relief, *what has been done will be undone.*

"If this were not so, the inferior court, by proceeding expeditiously and arbitrarily, could defeat the remedy. . . . "

And further, on page 392, the court says:

"If such proceedings, conducted with such precipitate haste, can deprive the injured party of a remedy to which he is clearly entitled, then our law must be lame and impotent indeed.

"But, happily, there is *no foundation for the claim that an inferior court can by mere haste and precipitancy, defeat the appropriate remedy for excesses of jurisdiction*, at least in a case where it may be intercepted before its action is fully completed."

The other point made, at the hearing comes as a fitting conclusion to this amazing proceeding. Counsel for respondent declare that the lower court does not intend to make any order which shall deprive any person of the right to vote, and they add that it has jurisdiction but does not intend to exercise it. What does this mean? The order to show cause states that any defendant not appearing, or failing to establish his right on or before October 29, 1934, shall have his name stricken from the great register, and shall be enjoined and prohibited from voting. The amended and supplemental order states that such defendants may be enjoined and prohibited from voting "by a subsequent order to be made hereafter" by the court. On the record there are orders of the court, inconsistent it is true, but each indicating an intention to adjudicate and determine the right to vote of all defendants in the action. Now counsel state, off the record, that the court *will not do* what the complaint asks it to do and what it said it would do in its order. But even counsel are not sure of what the court *will do*. One of counsel suggested that it would be "a provisional order" striking the name of the voter from the election rolls unless he appears before the judges of election and establishes his right to vote. Another frankly declares that he does not know what the judge will do, but thinks he has in mind a "challenge in gross". Thus, the election board would act as a court of appeal or review of the decision of the superior court. I had conceived the power of review as lodged in a different tribunal.

It is sufficient, I think, to point out that the right of petitioners to a writ of prohibition to correct excesses of jurisdiction cannot be defeated by counsel's hope. According to counsel now, it would appear that the whole proceeding below is a subterfuge, intended to frighten and coerce voters by raising the barrier of a legal action, and placing upon them the burden of searching the monumental black list of defendants to discover any attack upon their registration; but not contemplating any effective judicial deter-

mination. If so, it is an abuse of the process of the court, and should be dismissed.

The writ of prohibition which this court has granted does not constitute an effective bar, either to the present proceeding, or others threatened, and hence fails to grant petitioners the full relief to which they are entitled under the law of this state.

Rehearing denied.

Thompson, J., voted for a rehearing.