*1168 OPINION.
Haehon :
Nathaniel and Anne Shilkret were domiciled in the State of New York in 1935. They resided in California during 1936 and 1937, when Nathaniel Shilkret, called petitioner as a matter of convenience, was employed by the RKO Studios in Hollywood under a two-year contract of employment. The petitioner contends that he and his wife were domiciled in California during the taxable years. If that contention is sustained, they were entitled to divide between them the net income of petitioner for income tax purposes under Federal recognition of the community property law of California, under which law one-half of the earnings and income of one spouse is the property of the other spouse.
Petitioner asserts that he moved to California with an intention, then, of remaining there for an indefinite time and that he acquired a fixed, present domicile there in 1935, at the earliest, or during 1936. Pie asserts that all of his acts, his state of mind, and his then intentions about the present and the future, were such that he acquired a new domicile.
The question is chiefly a question of fact, but three legal tests must be met by petitioner, in this case particularly, because petitioner’s contention involves proof of abandonment of an original domicile, *1169 for it appears that at all times up to the time of this controversy petitioner was domiciled in the State of New York. To establish a change of domicile petitioner must prove that he (1) abandoned the original domicile, (2) moved to and resided in a new domicile, and (3) had an intent of remaining, permanently and indefinitely, in the new domicile. Corpus Juris Secundum, vol. 28, p. 30; Kenna, “Residence and Domicil” (1934), p. 194; Beale, “Conflict of Laws”, vol. 1, p. 145, sec. 18.2; 9 R. C. L. 553. “Mere absence from a fixed home, however, long continued, can not work the change. There must be the animas to change the prior domicil for another. Until the new one is acquired, the old one remains.” Mitchell v. United States, 21 Wall. 350. “A domicil when acquired is presumed to continue until it is shown to have been changed.” Anderson v. Watt, 138 U. S. 694, 706.
The question must be decided against petitioner because he has failed to show that he abandoned his original domicile. The facts have been fully set forth in the findings. Upon due consideration of all of the evidence, it has been found as a fact that Nathaniel and Anne Shilkret were domiciled in New York State during the taxable years. The considerations which entered into arriving at this conclusion are as follows, as briefly as a summary of the facts permits:
When the lease on the New York apartment expired on September 30, 1936, it was renewed for another year, until September 30, 1937. Again, when the lease expired in 1937, it was renewed for another year, until September of 1938. That appears from the fact that Mrs. Shil-kret returned to the apartment permanently at the end of 1937, petitioner returned there in March of 1938, and both lived there until 1939, when they moved to a new apartment in New York City. Retention of the apartment in New York and failure to move any household goods to California negative petitioner’s assertion that he intended to live in California permanently and indefinitely at the time he went there. There is no convincing or even persuasive explanation for the two renewals of the New York lease in 1936 and 1937. Petitioner entered into the contract with RKO on October 31, 1935. Of course, with due regard for the usual difficulties of lawfully extricating oneself from lease obligations, it would have been only a matter of enforced delay, if the Shilkrets had not moved their household possessions to California until the lease expired in September of 1936 (see Behrensmeyer v. Kreitz, 26 N. E. 704, 712, referring to Louis Steffin), but the renewal of the lease in 1936 and the second renewal, in 1937, strongly indicates that there remained throughout an intention to return to New York. Due consideration has been given to the close proximity in the dates of the expiration of the RKO contract on November 18, 1937, and expiration of the New York lease on September 30, 1937. But, again, leaving out for the moment the question of the second renewal of the lease, it is difficult to understand why the *1170 Shilkrets made the first renewal in 1986. On March 15,1937, tax day for the year 1986, they had not taken any of the steps usually taken when persons make a permanent move to a new home in a new locality. If it was a matter of delay in finding a home in California to purchase, as part of petitioner’s testimony suggests, it is not reasonable to believe that the facilities for storing the furniture for a short time in California would not have occurred to persons who had a definite and fixed intent to establish a permanent home in California, as petitioner asks us to believe. Nor is it reasonable to believe that persons who had a present intent to establish a permanent home in California would, after carrying the New York lease well into the autumn of 1936, at a rental of $3,000 a year, consider it cheaper, or more economical to contract to pay another year’s rental of $3,000, on September 30, 1936, rather than to move the household furnishings to California and store them in a warehouse until all requirements were m,et in selecting a new house. Mrs. Shilkret’s explanations, that she was ill at the time the lease expired in September of 1936 and that she was unable to find an unfurnished house to suit her taste, have been considered. But, we believe that they are not entitled to receive much weight in the total considerations. The nature of her illness is not explained. Inability to locate an unfurnished house in or near Hollywood is difficult to believe, and, finally, the general situation does not appear to have been so complex that, if the parties had had a very firm desire to move to California in order to locate there permanently, they could not have found a way of moving their furniture to California and relinquishing the New York lease between October 31, 1935, and September 30,1936, or September 30,1937. If, also, as petitioner asserts, he intended to leave behind him all business activities in New York and to start new professional activities in the motion picture industry in California and devote himself to them for the rest of his life, the record does not provide any explanation of why, as things stood in September of 1936, petitioner did not terminate the New York lease and really move to California.
It appears to be closer to the realities of the whole situation to interpret petitioner’s state of mind in 1936 relating to his future professional work to have been to stay in California if he found it profitable to do so at the end of his two-year contract; otherwise, to return to New York. Petitioner’s retention, throughout the period of the RKO contract, of a place of abode in New York City was certainly a keeping of his “bridges” in New York, and such is indicative of retention of original domicile. See District of Columbia v. Murphy, 314 U. S. 441.
Nor does it appear that in his professional work, petitioner burned his bridges in New York. During the taxable years, and after he returned to New York, he continued to do radio broadcasts, which can be done in any place, New York or elsewhere. He refused to enter *1171 into a contract with. MGM because they would not permit him to do radio work. Also, petitioner kept business offices in New York City, as his deductions for office rent in 1936 and 1937 show. Petitioner’s alleged intent is negatived and contradicted by acts inconsistent with the avowed intent of establishing a domicile in California. District of Columbia v. Murphy, supra; In re Beechwood, 254 N. Y. S. 473; Paul & Merten’s Law of Federal Income Taxation, vol. 2, sec. 16.05, p. 60; Rosenberg v. Commissioner, 37 Fed. (2d) 808.
The filing of income tax returns in California lends no weight to petitioner’s argument. He was a “resident” of California, as defined by the state income tax statute, and, as such, he was required to file a return for income from sources within the state, whether or not he was domiciled there. Cal. Stat. 1935, p. 1090, sec. 2 (k), and Cal. Stat. 1937, p. 1831, sec. 2 (k).
The weight of the evidence, in our opinion, supports the conclusion reached. Petitioner has failed to show that he took up residence in California with any present intention of residing there indefinitely and permanently without any actual intention of returning to New York as his permanent home; that he abandoned the original domicile in the State of New York. See United States v. Knight, 291 Fed. 129; affd., 299 Fed. 571; C. M. Weatherwax, 21 B. T. A. 861.
Petitioner contends, also, that regardless of domicile in California the income earned in California is community property for tax purposes. The same contention was made in Herbert Marshall, 41 B. T. A. 1064, 1068. The Board rejected this argument as unsound in the Marshall case and it is not entitled to consideration here.

Decision wild be entered for the respondent in Docket No. 103773. Decision that there is no deficiency will be entered in Docket No. 10377f.